UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION No. 4:22-cv-40003

DWAYNE DIGGS, DEMETRIUS GOSHEN,
JAMES JACKS, DAVID JACKSON,
RAPHAEL REBOLLO, LUIS SALDANA,
DAVONGIE STONE, XAVIER
VALENTIN-SOTO, and DANAVIAN DANIEL,

        Plaintiffs,

V.

CAROL MICI, Commissioner of the Massachusetts
Department of Correction; PAUL HENDERSON,
former Deputy Commissioner of Field Services;
CHARLES PRIMACK, Director of Special
Operations; STEVEN KENNEWAY, former
Superintendent of Souza-Baranowski Correctional
Center; DEAN GRAY, Superintendent of
Souza-Baranowski Correctional Center; RONALD
GARDNER, Director of Security at Souza-Baranowski
Correctional Center; Captains DONALD DENOMME and
DAVID BRIEN; Lieutenants PAUL BIRRI, KEITH HOULE,
ROBERT DESCHENNE, JAMES ALLAIN, and
JAMES GEARIN; Sergeant ROBERT D'AMADIO;
Correction Officers JOSEPH BELLINI and
JOHN MADDEN; and K9 Officer EVAN LARANJO,

        Defendants.

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DOCUMENTS AND INTERROGATORY ANSWERS

Now come the Defendants in the above captioned matter and hereby oppose Plaintiffs'

Motion to Compel Documents and Interrogatory answers pursuant to Fed. R. Civ. P. 26 and Fed.

R. Civ. P. 37. Specifically, Plaintiffs move to compel Defendants to produce documents responsive

to thirteen (13) of the ninety-five (95) document requests contained in Plaintiffs' First Set of

Document Requests to Defendants as well as move to compel all Defendants to further answer

specific interrogatories contained in Plaintiffs' First Set of Interrogatories to Defendants. As

1

grounds therefore, Defendants state that they have been actively engaging in discovery in this putative class action and to date have produced hundreds of thousands of pages of documents responsive to Plaintiffs' voluminous and very overbroad document requests despite the class not yet being certified.  Additionally, Defendants have answered Plaintiffs' very overbroad and vague interrogatories as best as they can and to the best of their respective knowledge. Further, Plaintiffs' discovery requests are incredibly overbroad and essentially are equivalent to "class discovery" even though Plaintiffs have yet to certify the class in this matter. For reasons further stated within this memorandum, Defendants oppose Plaintiffs' Motion to Compel.

## **BACKGROUND**

This case arises out of events that took place at Souza-Baranowski Correctional Center ("SBCC") from January 10, 2020 to February 6, 2020, which is referred to as the "Lockdown" period in Plaintiffs' Complaint.  On January 10, 2020, an incident occurred at SBCC in which several incarcerated individuals seriously assaulted four correctional officers on a North Side housing unit. In the fall of 2019, there were several other staff assaults at SBCC. These staff assaults, and particularly the severity of the staff assault on January 10, 2020, led to an immediate lockdown of SBCC in order to investigate the staff assault and secure the facility. The institution subsequently underwent a reorganization in January 2020 in an effort to prevent future disturbances and attacks on both staff and incarcerated individuals.  On February 6, 2020, the Lockdown at SBCC ended.

On January 10, 2022, Plaintiffs filed this Complaint as a putative class action alleging that during the Lockdown period, Defendants engaged in a campaign of excessive force against Plaintiffs and other incarcerated individuals at SBCC. Plaintiffs also allege in the Complaint that Defendants targeted certain incarcerated individuals based on race and that the excessive force used on incarcerated individuals during the Lockdown was in retaliation for the January 10, 2020

2

brutal assault on four correctional officers. Defendants deny these allegations in their entirety. On October 19, 2022, Plaintiffs served Defendants with their First Request for Production of Documents, which included ninety-five (95) separate requests, several of which contained upwards of twenty (20) sub-parts. Additionally, on that same day, Plaintiffs served Defendants with their First Set of Interrogatories to all Defendants and a lengthier separate set of Interrogatories to Defendant Mici. Defendants produced documents on January 9, 2023 and have continued to produce documents on a regular basis with the most recent production of documents being on September 8, 2023. Defendants produced interrogatory answers for most Defendants on January 24, 2023 with the remaining answers being produced on January 25, 2023 and February 9, 2023. Further, Defendant Mici provided supplemental answers to Plaintiffs' interrogatories on July 21, 2023. To date, Defendants have produced hundreds of thousands of pages of documents, hundreds of hours of video, hundreds of audio recordings, and dozens of photographs in response to Plaintiffs' voluminous document requests. Nonetheless, Plaintiffs filed this Motion seeking an order to compel Defendants to produce documents for thirteen (13) of their document requests and to further answer interrogatories. Defendants address these items below.

## **ARGUMENT**

## II.    **DEFENDANTS SHOULD NOT BE COMPELLED TO PRODUCE DOCUMENTS THAT ARE OVERBROAD, UNDULY BURDENSOME, AND IRRELEVANT TO THE CURRENT ACTION.**

Plaintiffs move to compel various documents responsive to specific document requests that seek information that is incredibly broad, overly burdensome, and irrelevant to the current action. Specifically, Plaintiffs move to compel documents responsive to Requests No. 3, 59-60, 68-71, 75, and 87. Defendants objected to these requests on the basis that the requests were broad, vague, unduly burdensome, not limited in scope or time, and sought information irrelevant to the current

action and therefore not reasonably calculated to lead to the discovery of admissible evidence pursuant to Fed. R. Civ. P. 26(b). In the matter of discovery, courts have long held that

> [a] court must limit discovery if it determines that the discovery sought is (1) unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the projected discovery in resolving the issues.

Katz v. Liberty Power Corp, LLC., 2020 WL 3492469 (U.S.D.C. Mass. 2020) (citation omitted). Further, the rules of civil procedure pertaining to discovery do not grant unlimited latitude to Plaintiffs, even Plaintiffs in a putative class action. Rule 26(b) states, in relevant part,

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Moreover, requests to produce documents "must describe with reasonable particularity each item or category of item…" Fed. R. Civ. P. 34(b)(1)(A). Requests to produce must also "specify a reasonable time, place and manner…" Fed. R. Civ. P. 34(b)(1)(B).

The subject matter of Plaintiffs' suit bears directly on the relevance of items requested in discovery and where, as here, the request for production is so overbroad that it extends beyond their specific claims, it should be denied. See Amcast Indus. Corp. v. Detrex Corp., 138 F.R.D. 115, 121 (N.D. Ind. 1991)(finding a discovery request was overly broad, where owner of property contaminated by industrial solvents requested that operation allegedly responsible for contamination produce all documents relating to any cleanups or removal actions in which it had been involved regardless of whether circumstances surrounding action bore any similarity to

4

subject matter of case; request was unlimited as to time frame as well as the types of documents sought and fell short of fulfilling the requirement of Rule 34(B); the request was not merely fishing expedition, but effort to drain the pond and collect the fish from the bottom); <u>Langford v. City of Elkhart</u>, No. S91-322(AS), 1992 WL 404443, at *3 (N.D. Ind. Apr. 21, 1992)(finding a request for production to be overbroad and a "fishing expedition" where the request called for "[a]ll documents regarding use of ... any ... instrumentality used by ... Elkhart Police Officers during the period January 1, 1987, up to and including the present...."; while there can be no doubt that this request may net some relevant information, the scope of the request extends far beyond the subject matter of plaintiffs' action.)

The Court in <u>Trask v. Olin Corp.</u> held that "discovery is broad, but it is not boundless." 298 F.R.D. 244, 257 (W.D. Pa. 2014). Furthermore, "[a]lthough the scope of discovery under the Federal Rules is ... broad, this right is not unlimited and may be circumscribed." <u>Bayer AG v. Betachem, Inc.</u>, 173 F.3d 188, 191 (3d Cir.1999).

> Requests should be reasonably specific, allowing the respondent to readily identify what is wanted. Requests which are worded too broadly or are too all inclusive of a general topic function like a giant broom, sweeping everything in their path, useful or not. They require the respondent either to guess or move through mental gymnastics which are unreasonably time-consuming and burdensome to determine which of many pieces of paper may conceivably contain some detail, either obvious or hiding within the scope of the request."

<u>Dauska v. Green Bay Packaging Inc.</u>, 291 F.R.D 251, 261 (E.D. Wis. 2013). A court will grant a motion to compel only where the movant shows that the information sought "is relevant to the subject matter involved in the pending action." <u>Gagne v. Reddy</u>, 104 F.R.D. 454, 456 (D. Mass. 1984), quoting Fed. R. Civ. P. 26(b)(1). While relevancy is broadly construed, a court will nonetheless deny a motion to compel where "it is clear that the information sought can have no possible bearing upon the subject matter of the action." <u>Id.</u>, quoting <u>Miller v. Doctor's Gen.</u>

Hospital, 76 F.R.D. 136, 138 (W.D. Okla. 1977); see also Whittingham v. Amherst College, 164

F.R.D. 124, 126 (D. Mass. 1995) (describing the contours of relevancy).

    In their Motion to Compel, Plaintiffs repeatedly claim that they need all of this discovery

because this is a class action, and that this discovery is necessary for them to move to certify the

class as well as conduct depositions. As an initial matter, Defendants point out that this is a

**putative** class action, with no class certified yet. Defendants, on a good faith basis, have provided

Plaintiffs with more discovery than they are entitled to, since this action still remains a putative

class action and not an actual class action. Plaintiffs have been provided with documents that

pertain to individuals well beyond the named Plaintiffs, despite there being no class defined.  While

Plaintiffs would like this Court to believe that the class cannot be certified due to outstanding

discovery, that simply is not the case. In several meet and confers with counsel for Plaintiffs,

counsel for Defendants specifically asked what documents were needed in order for Plaintiffs to

certify the class.  Counsel for Plaintiffs responded claiming several documents including all use of

force packages and reports from the Lockdown at SBCC, all disciplinary reports received by

incarcerated individuals during the Lockdown at SBCC, all grievances filed by incarcerated

individuals during the Lockdown at SBCC, and all investigations regarding the, would assist them

in identifying the class and as such moving to certify the class. These documents were provided to

Plaintiffs in February 2023, April 2023, and July 2023. See Exhibits 2, 4, 5, 12, and 13,

Defendants' Supplemental Responses to Plaintiffs' Request for Production of Documents.  It is

unclear what else Plaintiffs could possibly need in order to move for class certification at this

point.[1]  Additionally, nothing has prevented Plaintiffs from conducting any depositions in this

---

[1] Plaintiffs also note in their Motion to Compel that will confer with Defendants regarding a motion to amend the scheduling order to extend the deadline yet again for class certification. Defendants anticipate opposing any such motion as it relates to extending the deadline for class certification.

matter. Counsel for Defendants even offered to prioritize certain discovery ahead of depositions so that those depositions can go forward and in fact several depositions have been conducted in the last few weeks.

In this case, Plaintiffs have admitted in their Motion to Compel that "their [request for production of documents] RFPs seek a large amount of information…" and during the various telephonic meet-and-confers, counsel for Plaintiffs' has even admitted that several document requests were "vague", "broad", or even "catch-all" requests intended to seek any and all information and documents. To date, Defendants have produced a voluminous amount of documents responsive to most, if not nearly all, of the Plaintiffs' ninety-five (95) requests, even though this is a putative class action and the class has yet to be certified. Defendants should not be compelled to produce documents that are completely irrelevant to this action and go way beyond the scope of discovery.  Defendants will address each document request in detail below.

### Request No. 3

In this request, Plaintiffs seek all the discovery that has been produced in the case *Silva-Prentice, et al. v. Turco, et al.*, 21-cv-11580-PBS. As grounds for wanting all of the discovery produced in another matter, Plaintiffs claim that the two cases are related since both cases involve the events that occurred at SBCC during January and February 2020. Additionally, Plaintiffs claim that Plaintiffs Silva-Prentice and Paulino would be class members as long as they do not opt out. First, while two cases may be related, that does not mean Plaintiffs are entitled to the discovery in a completely separate matter. Second, as Defendants have noted several times above, this matter is not a certified class action. At this juncture, there is no class that either Plaintiffs Silva-Prentice or Paulino would be a member of. Moreover, Plaintiffs Silva-Prentice and Paulino have gone on record indicating that they would opt out of a class. As such, it is hard to fathom how the discovery

in that case is relevant to this case where there is no class certified and those Plaintiffs have indicated their unwillingness to join a class, should one ever get certified.

Plaintiffs also claim that they need the discovery from the *Silva-Prentice* matter because Plaintiffs believe that Defendants (and particularly counsel for Defendants) will fail to produce relevant materials produced in *Silva-Prentice*. Plaintiffs' counsel base this belief on the fact that they learned of certain documents previously produced in *Silva-Prentice* that had not been produced yet in this matter and allege that those documents were only produced in this matter after it was called to Defense counsels' attention. Plaintiffs are not only wrong, but completely mischaracterize Defendants' several productions of documents in this matter. Of note, the *Silva-Prentice* matter was filed in September 2021, four months before this matter was filed. Additionally, the *Silva-Prentice* matter started discovery much earlier than this matter and has been engaged in discovery for a much longer period of time. As such, it is only natural that certain documents would be produced as part of discovery in that matter before those documents may be produced in this matter simply because both cases are not on the same schedule due to them being filed at different times. Moreover, counsel for Defendants have been very open and honest with counsel for Plaintiffs about their efforts to obtain documents responsive to each and every one of their ninety-five (95) requests and subparts, and that they are not going to simply produce documents that have already been produced in another matter without reviewing those documents to ensure they are responsive in this matter. Also, there is a protective order in this matter while the *Silva-Prentice* matter simply has a non-disclosure agreement. As such, there are more documents that are being produced in this matter than *Silva-Prentice* and the documents produced in this matter are less redacted than those in *Silva-Prentice*. Finally, with the exception of certain documents that pertain to the named parties in *Silva-Prentice*, nearly everything produced in that

8

matter related to the Lockdown at SBCC has already been produced in this case. See Exhibits 1-19, Defendants' Responses and Supplemental Responses to Plaintiffs' Request for Production of Documents. As such, Plaintiffs' request for the discovery is not only moot but also unreasonably duplicative and cumulative. Therefore, Plaintiffs' request for the entire document production in the *Silva-Prentice* matter should be denied.

**Requests Nos. 59 and 60**

In these requests, Plaintiffs seek policies, procedures, training records, and materials related to twenty-three (23) separate topics that were in effect in January 2020 and any time since. First, these requests are overbroad, vague, unduly burdensome, and not limited in either scope or time. Nonetheless, Defendants produced several policies responsive to Request No. 59 and produced all of the Defendants' training records responsive to Request No. 60. See Exhibits 1, 8, 15, and 16, Defendants' Supplemental Responses to Plaintiffs' Request for Production of Documents. Still unsatisfied with these documents, Plaintiffs have further requested in subsequent meet and confers that they are seeking all of the training materials related to every single training each Defendant has attended in their entire career. Plaintiffs have further clarified training materials to include any and all lesson plans, curriculum, PowerPoints, recordings of trainings, and other documentation of all trainings, including both in person and online. The training materials Plaintiffs seek are overbroad and unduly burdensome as evidence by not only the twenty-three (23) sub-topics in the text of Request No. 59 but also in Plaintiffs' Exhibit 12, which lists one hundred and sixty-six (166) separate trainings attended by Defendants throughout their entire careers with DOC, which for some Defendants are decades long. Additionally, these materials are highly irrelevant to the current action as it seeks an enormous amount of documents that have nothing to do with the allegations in Plaintiffs' Complaint. Plaintiffs already have the training

9

records of each Defendant. Additionally, there are other discovery methods, including depositions, available to Plaintiffs to get more information regarding each Defendant's training. Plaintiffs have not articulated any particular need for these documents other than that they simply want these training materials. Moreover, these training materials contain highly sensitive information pertaining to safety and security particularly when it comes to training related to security responses and procedures to emergencies. Given the broad, sweeping nature of these requests, it is remotely possible that some relevant information may be unearthed, but it is well beyond the scope of discovery and should be denied.

**Requests Nos. 68-71**

In these requests, Plaintiffs seek documents relating to the job duties and responsibilities of the positions of Captain, Lieutenant, Sergeant, and Corrections Officer in effect in January 2020. Defendants previously produced position descriptions for each position. See Exhibit 1, Defendants' Responses to Plaintiffs' Request for Production of Documents. Despite producing these documents, Plaintiffs further seek post orders for each of these positions. Defendants further objected to the production of post orders on the basis of safety and security concerns. See Exhibit 13, Defendants' Supplemental Responses to Plaintiffs' Request for Production of Documents. The post orders Plaintiffs seek are essentially a blueprint to how each and every area of an institution is run on a day-to-day basis. These post orders contain highly sensitive information relating the internal workings of DOC. DOC has a legitimate security concern in producing these documents as disclosure of this information, even under a protective order, could prove detrimental, especially where post orders contain information about DOC's security response procedures.

Moreover, these post orders are irrelevant to the current matter. While Plaintiffs argue in their Motion to Compel that these post orders are relevant and necessary for them to establish

liability of both supervising officers and subordinate officers, that argument fails based on a reading of the four corners of Plaintiffs' Complaint. Every Defendant, with the exception of those in management positions[2], is named in the Complaint as an officer "assigned to tactical teams…". See Plaintiffs' Complaint, ¶¶ 30-40. As such, as alleged in Plaintiffs' Complaint, Defendants were not acting in their respective roles as Captain, Lieutenant, Sergeant, or even Corrections Officer, but rather were acting as a Special Operations team member. Post orders related to their positions within various institutions across DOC, outside of the Lockdown period at SBCC, are completely irrelevant to the current matter as Defendants were not acting in those capacities. Plaintiffs' Complaint is purely about events that took place at SBCC during January 10, 2020 through February 6, 2020 with particular focus on uses of force carried out by "tactical teams" or Special Operations teams and, therefore, post orders related to positions of Defendants, who were not operating in those positions at the time, are completely irrelevant and go beyond any of the allegations in Plaintiffs' lengthy Complaint. Further, as counsel for Plaintiffs is aware through recent deposition testimony, there are no post orders for a member of Special Operations generally or for a member of any specific Special Operations teams. See Exhibit 13, Defendants' Supplemental Responses to Plaintiffs' Request for Production of Documents. Given the serious security concerns and the highly irrelevant nature of these post orders to the current matter, Defendants should not be compelled to produce them.

**Request No. 75**

Plaintiffs seek the complete personnel records of all Defendants in this request, as well as any and all documents regarding unsubstantiated allegations of misconduct and/or unsubstantiated disciplinary charges. Pursuant to 103 DOC 204 Personnel Records, it is the Department's policy

---

[2] Defendants in management positions would include Defendants Mici, Henderson, DePalo, Primack, Kenneway, Gray, and Gardner.

that: personal data contained in personnel records are confidential materials; employees have a right to privacy regarding said data; and access to said data is limited to instances where there is a clearly demonstrated need for this information, or where the employee has given his/her written consent. Defendants maintain their objections that the personnel files are not subject to disclosure pursuant to G.L. c. 4, § 7(26)(a)(c); G.L. c. 66, § 10; G.L. c. 66A, § 2(c)(k); and G.L. c. 214, § 1B.

Defendants also maintain their objections that the entire personnel file of each Defendant is irrelevant. Defendants have already produced training records and disciplinary histories. Plaintiffs have not demonstrated the relevance of the entire personnel file. An employee's personnel file has six parts and includes personal information that is not relevant to the suit at hand, including requests for medical leave, family details, insurance and payroll information.[3] See 103 DOC 204 Personnel Records. In their Motion to Compel, Plaintiffs argue that the entire personnel files are relevant because it could support their claim that supervisory Defendants failed to supervise and train subordinate Defendants. It strains credulity how records pertaining to pay, benefits, vacation and sick leave, and background information can even remotely support a failure to supervise claim where those documents are about personal details of an individual Defendant

---

[3] 103 DOC 204.03 Organization and Contents of Employee Personnel Files outlines the contents of a personnel file. Section I contains the following kinds of personnel information: Job Application and Resume, Background Check, Probation Record, FBI Fingerprint Card, Employee Personnel Data. Section II contains the following kinds of personnel information: Attendance Calendars, Approvals of Medical Leaves of Absence, Approvals of Family Leaves of Absence, Approvals of Requests for Maternity /Adoptive Leaves of Absence, Copies of Attachments A through F from 103 DOC 209, Sick Leave issued in accordance with said policy. Section III shall contain the following kinds of personnel information: Performance Evaluations, Letters of Commendation, Letters of Reprimand/Discipline. Section IV shall contain employee certification/sign off forms verifying receipt of various rules, regulations, policies and codes of conduct. Section V shall contain the following kinds of personnel information: Training Certificates, listing type of training and number of training hours, Request and Receipt of Special State Police Commission, Request and Receipt of Department of Correction Firearms License. Section VI shall contain the following kinds of personnel information: Personnel Action Forms, Payroll Action Forms, Retirement Forms, Group Insurance Forms, Industrial Accident Forms, Miscellaneous Correspondence. The preceding list (Sections i.-vi.) is not intended to be definitive, but rather, it is intended to provide examples of the kinds of personnel information contained in employee personnel records. Individual records may not necessarily contain every item listed (e.g., commendations or reprimands for employees that have never had occasion to receive such letters).

and do not in any way pertain to their supervision or training. Rule 26(b)(1) plainly states that relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  Here, none of the information contained in the Defendants' personnel files is even tangentially related to the claims, other than disciplinary histories and training records, which have already been produced.  Even assuming that personnel files are found relevant, Plaintiffs have not stated how production of those files would lead to the discovery of admissible evidence.  Given both their lack of relevance and potential to lead to admissible evidence, the files should not be compelled.  Fed. R. Civ. P. 26(b)(1).  Furthermore, contrary to Plaintiffs' assertions, nothing contained in the personnel record, as outlined in 103 DOC 204.03, suggests that information in those files would reveal information relevant for impeachment purposes or information pertaining to the training and supervision or failure to do so of any particular defendant. As such, compelling the files for information they might possibly contain about failure to supervise, train, and for potential impeachment purposes would be a fishing expedition. See Strait v. Mehlenbacher, 526 F. Supp. 581, 584 (W.D.N.Y. 1981) (Defendants' request for discovery was found to be an attempt to utilize the discovery rules as a "fishing expedition" where they were seeking to find some basis to support their civil rights claim).

With regards to Plaintiffs' request for documents pertaining to unsubstantiated allegations of misconduct and/or unsubstantiated allegations of disciplinary charges, this request is not only overbroad and unduly burdensome but also completely irrelevant to the current litigation. Further, Plaintiffs have once again mischaracterized representations made by counsel for Defendants during several meet and confers.  At the outset, Defendants object to producing any documents pertaining to unsubstantiated allegations of misconduct and/or disciplinary charges. Nonetheless, as a compromise, during a meet and confer, counsel for Defendants offered to produce

unsubstantiated allegations of misconduct for each Defendant for a period of five (5) years prior to January 2020 related only to allegations of misconduct as to incarcerated individuals. Contrary to Plaintiffs' assertions, counsel for Defendants did not limit it to only substantiated claims of excessive force and also did not limit it to only claims brought by incarcerated individuals. Rather, Defendants limited it solely as to allegations of misconduct pertaining to incarcerated individuals, as that is the only shred of relevancy to this matter. Additionally, counsel for Defendants attempted to limit this request in time as many, if not all Defendants, have a lengthy career with DOC that spans decades. Even assuming *arguendo* that these unsubstantiated allegations of misconduct and/or disciplinary charges have some relevancy, that relevancy is dependent on the closeness in time to the events of Plaintiffs' Complaint. It again strains credulity that unsubstantiated allegations from ten to thirty years ago are somehow relevant to anything in this action, particularly where the allegations of misconduct concern other incarcerated individuals not currently parties to this matter, at different institutions, and under a completely different set of circumstances. Plaintiffs attempt to argue that past allegations of misconduct "may" lead to admissible character evidence only if they are able to demonstrate a pattern. By Plaintiffs' own admission, they are merely "guessing" that there may be admissible evidence in these documents, thus by very definition, are on a fishing expedition. Moreover, to the extent Plaintiffs seek this information for impeachment purposes, they already have the disciplinary histories of each Defendant which clearly indicates any discipline they have received and the general basis for that discipline. Plaintiffs do not present this Court with any information to find that the proportionality requirement of Rule 26(b)(1) falls in Plaintiffs' favor, especially where Plaintiffs were able to conduct their own investigations into Defendants' allegations of misconduct, and where the plain

language of the disciplinary histories provide more than enough information to determine whether or not the conduct for which the employee was disciplined may be raised as a credibility issue.

Defendants have also produced all investigations, whether founded, unfounded, substantiated, or unsubstantiated, that were conducted as a result of any allegations of misconduct against them during the Lockdown at SBCC. As such, Plaintiffs have all of the information directly related to their claims in this matter.  Plaintiffs purely seek documents that go beyond the scope of the Complaint in an effort to find improper character evidence to improperly use at depositions or potentially trial. As it pertains to disciplinary investigations that were not conducted in connection with the aftermath of the staff assault at SBCC in January 2020, the relevance of such information is speculative at best. Even so, Plaintiffs "ha[ve] not been prevented from obtaining discovery as to th[ose] issue[s]…" and plaintiffs have "sufficient facts to conduct a cross-examination… to the extent it is relevant." See United States v. Regeneron Pharmaceuticals, Inc., 2023 WL 3061505, at 3 (U.S.D.C. Mass.)(Court declined to order additional discovery productions regarding improper actions of employee where sufficient information was provided to allow for adequate cross-examination). Plaintiffs' request for Defendants' full personnel and disciplinary files should be denied.

**Request No. 87**

In this request, Plaintiffs seek all officer injury reports concerning injuries to DOC staff during the Lockdown period at SBCC. Defendants appropriately objected to this request on the grounds that it is overbroad, seeks information irrelevant to this action, and more importantly seeks production of medical information of DOC employees, which is protected information under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  Plaintiffs argue in their Motion to Compel that the request is not seeking medical records, which would be protected under

HIPAA, but rather DOC reports (which are not medical records) and therefore not protected. Plaintiffs' argument fails as HIPAA refers to protected health **information,** not protected health **records**. Health information, in any format, is protected by HIPAA and therefore should not be ordered to be disclosed. Further, to the extent that Plaintiffs are seeking any "reports" of officer injuries, those reports were already produced by Defendants. Defendants produced incident reports, which briefly mention whether any DOC employee sustained any injury. The only documents that Defendants have not produced were confidential medical reports written by medical staff detailing the extent of the injury and treatment options, which Defendants argue is nearly akin to a medical record, but nonetheless is protected under HIPAA. It is clear from Plaintiffs' Motion to Compel that counsel for Plaintiffs has not fully reviewed all the discovery produced by Defendants and is unaware that what they are seeking in this request has already been produced.

Plaintiffs further claim that even if HIPAA applied to Defendants, Defendants should be compelled to disclose their protected health information because of the protective order in this matter. However, as Plaintiffs correctly note, the protective order currently **only** covers *Plaintiffs'* confidential, sensitive, and protected medical and mental health records, **not** *Defendants.* While Plaintiffs conveniently offer to amend the protective order in their Motion to Compel to include Defendants' protected health records, the protective order does not currently provide this protection. Moreover, Defendants would not agree amend the protective order as this information is highly personal and sensitive, which is exactly why it is protected from disclosure. As such, where Plaintiffs already have the information sought by this request in incident reports and where the information is highly sensitive and thus protected by HIPAA, Defendants should not be compelled to produce any further documents responsive to this request.

16

## III.    DEFENDANTS CANNOT PRODUCE DOCUMENTS THAT DO NOT EXIST.

Plaintiffs move to compel certain documents pursuant to specific document requests that simply do not exist and as such Defendants cannot be compelled to produce said documents. Specifically, Plaintiffs seek to compel Defendants to produce documents responsive to Requests No. 48, 49, and 55.  With regards to Requests No. 48 and 49, Plaintiffs seek documents pursuant to 103 DOC 561.10 and 103 DOC 561.11.  Defendants have searched for documents responsive to these requests, but there are simply no responsive documents. See Exhibit 18, Defendants' Supplemental Responses to Plaintiffs' Request for Production of Documents.  Both Fed. R. Civ. P. 26(b) and Fed. R. Civ. P. 34 do not require counsel for Defendants to conduct investigations independent of information provided by their clients, or to conduct searches for materials above and beyond those performed by the clients. As such, where there are no responsive documents, Defendants cannot be compelled to produce documents that do not exist.

With regards to Response No. 55, Defendants produced the SBCC Institutional Policy and Procedures Manual in effect at the time on January 9, 2023.  During a meet and confer with Plaintiffs' counsel, counsel indicated that they were also seeking "the corresponding study guides on CD pursuant to 103 DOC 104.08".  On July 21, 2023, Defendants produced a supplemental response indicating that there were no further responsive documents as the CD Plaintiffs seek no longer exists. See Exhibit 14, Defendants' Supplemental Responses to Plaintiffs' Request for Production of Documents. Prior to fall 2019, the aforementioned CD was a CD that contained policies on it of the required reading for exam preparation of promotional exams. During the fall of 2019, DOC implemented PowerDMS, a program that allows any DOC staff member to access all DOC policies and regulations by logging into an online portal. As such, in January 2020, the CD no longer existed. The policy, 103 DOC 104.08, was subsequently updated to reflect the

discontinued use of the CD in favor of PowerDMS.  See Exhibit 20 103 DOC 104. As such, the CD requested in Request No. 55 simply does not exist, and therefore Defendants cannot be compelled to produce something that does not exist.

IV.    **A COURT ORDER COMPELLING PRODUCTION OF DOCUMENTS IS NOT NECESSARY WHERE DEFENDANTS CONTINUE TO PRODUCE RESPONSIVE DOCUMENTS ON A ROLLING BASIS.**

Plaintiffs move to compel documents pursuant to Request No. 83 which is essentially a request for any and all emails for each Defendant concerning the Lockdown at SBCC including thirty-seven (37) keyword and Boolean searches. To date, Defendants have produced emails from January 10, 2020 through February 6, 2020 for Defendants Mici, Henderson, DePalo, Primack, Kenneway, and Gray. See Exhibits 6, 7, 11, 13, and 17, Defendants' Supplemental Responses to Plaintiffs' Request for Production of Documents.  The emails produced for these Defendants alone totals more than 8,200 pages. Additionally, there are no responsive emails for Defendants Birri, Deschene, Gearin, D'Amadio, Bellini, and Madden. See Exhibit 21, Affidavit of Kara Morello-Quinn. Defendants are currently working to produce emails for the remaining Defendants as quickly as possible, but this is not an easy or efficient task, and there are logistical difficulties specific to the email productions that have made email productions much more time consuming than other discovery requests. See Exhibit 21, Affidavit of Kara Morello-Quinn. The above-captioned case is one of the most voluminous cases DOC has ever handled in terms of discovery. In fact, Plaintiffs admitted in their Motion to Compel that their Request for Production of Documents seek a large amount of information and that Defendants have produced a substantial volume of discovery to date, including over 100,000 pages of discovery, as demonstrated in the over sixteen (16) productions to date. Nonetheless, Plaintiffs are dissatisfied at the rate of discovery production in this matter, particularly with regards to the emails responsive to Request

No. 83. However, the reality is that DOC is subject to several limitations in its discovery gathering, review, and redaction process that are outside of Defendants' control. These limitations have been described several times to Plaintiffs' counsel during several meet and confers. Defendants so far have reviewed more than 10,000 of emails to date and have recently required new software to expedite the review and production of emails. See Exhibit 21, Affidavit of Kara Morello-Quinn. In fact, Defendants just recently produced the emails of Defendant Gray shortly after Plaintiffs filed this Motion to Compel. Defendants will continue to produce emails for each Defendant and anticipate producing emails for the remaining Defendants within the next month. As such, a court order compelling production is not necessary where Defendants have agreed to produce said documents and are doing so as diligently as possible.

In their Motion to Compel, Plaintiffs unfairly state that Defendants chose February 6, 2020 as an "arbitrary cutoff date for discovery" with regards to the emails responsive to Request No. 83. As an initial matter, Plaintiffs' Request No. 83 is silent as to a time period at all.  As Plaintiffs admit in their Motion to Compel, February 6, 2020 is the last date of the class period. As such, it was reasonable for Defendants to read Plaintiffs' Request No. 83 to be seeking emails from January 10, 2020 through February 6, 2020, the Lockdown period at SBCC as defined in Plaintiffs' Complaint. Plaintiffs allege in their Motion to Compel that they are essentially seeking all emails to the present as they believe that there are continued discussions about the Lockdown amongst DOC staff and that these discussions are therefore relevant to the current action. While this current litigation was filed in January 2022, several other lawsuits related to the events at SBCC in January 2020 and February 2020 have been filed before this one, including one that was filed shortly thereafter in February 2020. As such, Defendants assert that any emails of the Defendants since litigation commenced, irrespective of when this particular matter was filed, are privileged as work-

product and/or attorney-client communications and, therefore, should not be compelled to be produced. Again, as demonstrated by the consistent production of documents on a biweekly basis, Defendants will continue to produce the remaining Defendants emails responsive to the request and a court order compelling such is not necessary.

## V. DEFENDANTS ALREADY ANSWERED PLAINTIFFS' INTERROGATORIES AND SHOULD NOT BE COMPELLED TO FURTHER ANSWER.

Ten months after filing this lawsuit and over 2 ½ years after the Lockdown period at SBCC, Plaintiffs propounded identical sets of Interrogatories to all Defendants except for Defendant Mici, who was propounded a separate set of Interrogatories. As noted earlier, Defendants answered Plaintiffs' Interrogatories in January 2023 and Defendant Mici provided supplemental answers in July 2023. Nonetheless, Plaintiffs remain dissatisfied with said answers and have now moved to compel all Defendants to further answer specific interrogatories. Defendants should not be compelled to further answer the interrogatories as the vague and overbroad interrogatories have already been answered by each Defendant to the best of their knowledge. Additionally, should Plaintiffs seek any further information with regards to specific interrogatories, there are other discovery methods available to them, *i.e.*, depositions, that afford Plaintiffs the ability to get further information. Defendants further address these specific interrogatories below.

### Defendant Mici's Answer to Interrogatory No. 21

Plaintiffs move to compel Defendant Mici to provide a further answer to Interrogatory No. 21 which states "Identify all investigations by any state or federal agency or body, or any individual, including any individual legislator or legislative committee, of DOC conduct during the Lockdown.". Defendant Mici objected to this interrogatory on the basis that it was overbroad, vague, not limited in scope or time, and seeks information irrelevant to this action. Additionally, Defendant Mici objected to this interrogatory on the basis that it seeks intelligence information

which is prohibited from disclosure pursuant to Massachusetts law. Defendant Mici answered this interrogatory, notwithstanding the objections, on January 24, 2023 by stating that she recalled legislators entering SBCC and meeting with the Superintendent and/or Legislative Manager during that time.

In their motion, Plaintiffs allege that Defendant Mici's answer to Interrogatory No. 21 is "vague" and fails to identify whether or not there were any investigations conducted by any outside agency into DOC's conduct during the Lockdown at SBCC or any details of those investigations. As an initial matter, while Defendant Mici is the Commissioner of the Department of Correction, her position does not make her privy to every and all investigations that are conducted by **other agencies** outside of the DOC into the conduct of DOC employees.  Moreover, Plaintiffs fail to mention in their motion that what they are truly seeking in Interrogatory No. 21 is information regarding an alleged grand jury investigation. Throughout discovery, including recent depositions of parties and non-party witnesses, Plaintiffs' counsel have sought information regarding an alleged grand jury investigation into conduct of DOC employees during the Lockdown at SBCC and have even sought details of DOC employees' testimony before any grand jury proceeding. Counsel for Defendants have objected to any questions regarding grand jury testimony and have instructed the DOC employee not to answer. There is a strong factual basis for advising clients not to answer questions about any grand jury proceedings.  Grand jury proceedings are secret and individuals cannot be compelled to testify as to what occurs during those proceedings. Further, Defendants' counsel are not privy to information about any grand jury investigation, or the target of such; do not represent any Defendant or party in any grand jury or other criminal proceeding; and cannot advise their *civil* clients about any aspect of grand jury or criminal law. Defense counsel

has a responsibility to ensure their clients do not receive improper advice or make statements that could impact any unknown investigations into their actions.

Plaintiffs offer no explanation why they need information regarding other agency investigations or grand jury proceedings in the course of this civil case. Simply stating that they want information is not the same as explaining *why* such information is so important to the discovery process or to the progress of this case. It would be improper and beyond the confines of Fed. R. Civ. P. 26(b)(1) to compel Defendant Mici to further answer this interrogatory and provide information regarding any outside agency investigation. Therefore, Plaintiffs' request for Defendant Mici to further answer Interrogatory No. 21 should be denied.

## Defendants' Answers to Interrogatory No. 2

Plaintiffs move to compel further answers of each and every Defendant to Interrogatory No. 2 on the basis that every answer by Defendants is vague, lacks specific details, and therefore fails to fully answer the interrogatory. Interrogatory No. 21 states:

> Identify all allegations of misconduct against you in connection with your employment with DOC including all informal and formal complaints, grievances, investigations, charges, notices of claim, or lawsuits, and the result of each such allegation, complaint, grievance, investigation, charge, presentment letter, or lawsuit (including any findings or discipline by DOC, and any verdict or settlement of any lawsuit). Identify all documents concerning the foregoing.

As an initial matter, Defendants stand by their objections that this Interrogatory is overbroad, vague, unduly burdensome, and not limited in scope and time as the direct text of the Interrogatory is incredibly broad and essentially seeks any and all information regarding any type of allegation of misconduct as to each Defendant throughout their entire careers. Most, if not all, of Defendants have been employed with DOC for ten (10) years or more. This Interrogatory is not limited at all as to time and therefore seeks information that is irrelevant to this matter, particularly information about events that occurred decades ago. Moreover, since the Interrogatory is also not limited in

scope, the information sought is irrelevant as it would include personal information and conduct that occurs outside Defendants' employment with DOC.

Despite valid objections, each Defendant answered the Interrogatory to the best of their knowledge as of January 2023, three years after the Lockdown at SBCC.  It cannot be expected that Defendants have perfect memories nor is there any discovery rule or requirement that any party, including Defendants, have a perfect memory and answer every interrogatory with exact detail. As noted above, most of the Defendants have incredibly lengthy careers with DOC that span decades.  Additionally, the Interrogatory is seeking information not just about investigations or lawsuits but rather any allegation of misconduct including informal complaints, which could be anything from a written complaint to a verbal complaint made by any individual during staff access hour or otherwise. The breadth of this Interrogatory is enormous and the very definition of unduly burdensome. Nonetheless, every Defendant truthfully and accurately answered the interrogatory to the best of their knowledge at this time.

Additionally, as noted above, Defendants have produced the disciplinary histories of each Defendant, as well as all of the investigations and inquiries conducted as a result of complaints during January and February of 2020, and those documents speak for themselves. Further, Plaintiffs can depose each Defendant and ask further questions relating to allegations of misconduct. Plaintiffs seem to suggest in their Motion to Compel that Defendants should be compelled to provide more information in their answers because said information is readily available to them, essentially implying that Defendants have a duty to review every and all investigation or document pertaining to allegations of misconduct throughout their career.  First, Plaintiffs are incorrect that Defendants have this information readily available to them. While disciplinary histories are contained within each Defendant's personnel records, allegations of

misconduct, whether informal, formal, or an investigation, are not contained in their personnel records. Further, several of the Defendants are no longer employed with DOC and therefore do not have access to this information. Nonetheless, it would be beyond unduly burdensome to have each and every Defendant review any and all investigation as well as any lawsuit in which they were named and discuss the details of said investigations or lawsuits.[4] At bottom, Defendants should not be compelled to further answer Interrogatory No. 2 where the interrogatory on its face is incredibly broad and unduly burdensome, Defendants already provided sufficient answers, and Plaintiffs have other means available to them to obtain the information sought by this interrogatory.

**Defendants Henderson, DePalo, and Allain's Answer to Interrogatory No. 14**

Plaintiffs move to compel Defendants Henderson, DePalo, and Allain to provide a further answer to Interrogatory No. 14 which states:

> Identify each instance that you witnessed or are aware of in which a DOC employee, or officer from an outside agency working at DOC, violated any DOC policy, regulation, procedure, rule, order, or directive during the Lockdown. For each such violation, identify the name of the employee or officer from an outside agency; the policy, regulation, procedure, rule, order, or directive violated; the date of the violation; and all actions you took in response to the violation. Identify all documents concerning such violations. If you did not witness any violations, please so state.

Defendants objected to this interrogatory on the grounds that it is vague, overbroad, unduly burdensome, not limited in scope or time, and seeks information irrelevant to the current action. Defendants further objected on the grounds that this interrogatory seeks internal personnel rules and practices and investigatory information not subject to disclosure pursuant to M.G.L. c. 4, § 7(26)(b)(f) as well as it encompasses personnel/personal information also not subject to disclosure pursuant to M.G.L. c. 4 § 7(26)(a)(c); M.G.L. c. 66 § 10; M.G.L. c. 66A, § 2(c)(k). Despite these

---

[4] As mentioned earlier, contrary to Plaintiffs' argument, Defendants do not have possession, custody, control, or access to these investigations.

objections, Defendants Henderson, DePalo, and Allain provided sufficient answers to this interrogatory as they identified whether there were policy violations by any DOC employee and the circumstances surrounding the violations.  Plaintiffs' only basis for compelling further answers is that they seek more information and particularly more specific details than what has already been provided.  Again, as noted above, Defendants answered these interrogatories nearly three years after the Lockdown at SBCC. It cannot be expected that Defendants Henderson, DePalo, and Allain have perfect memories or remember every single detail of events that occurred that long ago. As such, Defendants answered this overbroad and vague interrogatory to the best of their knowledge at the time. Moreover, Plaintiffs have the investigations that were conducted regarding DOC employees' conduct during the Lockdown at SBCC and those documents speak for themselves. Further, Plaintiffs have the ability to depose these Defendants and seek further information. As such, Defendants should not be compelled to answer further where they already provided an answer and Plaintiffs have other means to obtain the information sought by this interrogatory.

Defendants maintain their objections that the interrogatory as framed is vague, overbroad, and irrelevant.  The information sought in Interrogatory No. 14 would require Defendants to give opinions and conclusions inappropriate in scope for an interrogatory.  The Rules of Civil Procedure were not drafted with the intention to "authorize interrogatories with an impact as wide as the entire case…".  See Hirt v. Unified Sch. Dist. No. 287, 2018 WL 3495845, at *3 (D. Kan. July 20, 2018). Accordingly, interrogatories that "indiscriminately sweep an entire pleading" and "require the responding party to provide in essence a running narrative or description of the entire case, together with identifications of all knowledgeable persons and supporting documents" are inherently improper.  Int'l Bus. Machines Corp. v. BGC Partners, Inc., No. 10 CIV. 128 PAC, 2013 WL 1775437, at *14 (S.D.N.Y. Apr. 25, 2013)(internal citations omitted); see also Onofrio v. Am.

<u>Beauty Macaroni Co.</u>, 11 F.R.D. 181, 184 (W.D. Mo. 1951)(holding that discovery should be confined to pure facts and not to any elaboration or explanation or comparison and interrogatories calling for an expression of opinion or calling for conclusions are objectionable and ordinarily should not be permitted.).  Here, Plaintiffs' Interrogatory No. 14 is improper as it essentially seeks Defendants to make Plaintiffs' case for them by providing specific details regarding any policy violations during the Lockdown at SBCC by any DOC employee.  Therefore, Plaintiffs' request for Defendants Henderson, DePalo, and Allain to provide further answers to Interrogatory No. 14 should be denied.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs' Motion to Compel Documents and further Interrogatory Answers from Defendants should be denied.

Respectfully submitted,
NANCY ANKERS WHITE
Special Assistant Attorney General

*/s/ Stephanie M. Caffrey*
Stephanie M. Caffrey (BBO# 697075)
Brittni Wipper (BBO# 696783)
Department of Correction
Legal Division
70 Franklin Street, Suite 600
Boston, MA 02110-1300
(617) 727-3300, ext. 1154
Stephanie.M.Caffrey@doc.state.ma.us
Brittni.Wipper@doc.state.ma.us

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants on the above date.


<u>9/15/2023</u>                                  <u>/s/ *Stephanie M. Caffrey*</u>
Date                                                Stephanie M. Caffrey, BBO #697075