**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **DIGGS, et al.** <br> **Plaintiffs,** <br> **v.** <br> **MICI, et al.** <br> **Defendants.** | ) | **CIVIL ACTION** <br> **NO. 22-40003-MRG** |

**MEMORANDUM OF DECISION AND ORDER**
**ON PARTIAL JOINT MOTION FOR CLASS CERTIFICATION**
**September 30, 2024**

**GUZMAN, D.J.**

Dwayne Diggs, Demetrius Goshen, James Jacks, David Jackson, Raphael Rebello, Luis Saldana, Davongie Stone, Xavier Valentin-Soto, and Danavian Daniel bring this action, on behalf of themselves and all others similarly situated against Defendants Carol Mici, as Commissioner of the Massachusetts Department of Correction, Paul Henderson, former Deputy Commissioner of Field Services; Charles Primack, Director of Special Operations; Steven Kenneway, former Superintendent of Souza-Baranowski Correctional Center; Dean Gray, Superintendent of Souza-Baranowski Correctional Center; Ronald Gardner, Director of Security at Souza-Baranowski Correctional Center; Captains Donald Denomme and David Brien; Lieutenants Paul Birri, Keith Houle, Robert Deschenne, James Aallain, and JAMES Gearin; Sergeant Robert D'Amadio; Correction Officers Joseph Bellini and John Madden; and K9 Officer Evan Laranjo ("Defendants"). The Plaintiffs are a group of prisoners who were housed at Souza-Baranowski

Correctional Center ("SBCC") in early 2020 and on January 10, 2022, filed suit under 42 U.S.C. § 1983, bringing claims of excessive force, conspiracy to deprive Plaintiffs of their constitutional rights, and violations of the Equal Protection Clause.

The parties now jointly seek to certify a damages class of prisoners at Souza-Baranowski Correctional Center ("SBCC") who allege that they were subjected to excessive force by correction officers. Specifically, the parties jointly seek to certify a damages class of prisoners at Souza-Baranowski Correctional Center ("SBCC") under Rule 23(b)(3) who allege that they were subjected to excessive force by correction officers from January 10, 2020, to February 6, 2020. While the parties also jointly seek to certify a class of prisoners at SBCC seeking injunctive relief, they do not agree on the scope and definition of this class. Plaintiffs seek to define the injunctive class as "all individuals who are now, or who will be in the future, incarcerated at Souza-Baranowski Correctional Center." Defendants seek to define the injunctive class as "all individuals who were incarcerated at SBCC who were subjected to uses of force from January 10, 2020, to February 6, 2020." Plaintiffs also seek to certify a subclass of Black and Latinx prisoners at SBCC who allege they were subject to racial discrimination under the Equal Protection Clause. Defendants oppose the creation of this subclass.

In consideration of the following assertions of the parties and in light of the prevailing law, the motion to certify the class is **GRANTED in part** and **DENIED in part** as follows:

1. Under Rule 23(b)(3) a damages class is certified consisting of "all individuals incarcerated at Souza-Baranowski Correctional Center who were subjected to uses of force from January 10, 2020, to February 6, 2020;"
2. A damages subclass is certified consisting of "all Black and Latinx individuals incarcerated at Souza-Baranowski Correctional Center who were subjected to uses of force from January 10, 2020, to February 6, 2020"; and

3. Under Rule 23(b)(2) a class is certified seeking injunctive and declaratory relief defined as "all individuals who were incarcerated at SBCC and subjected to uses of force from January 10, 2020, to February 6, 2020."

## I. Background

On the morning of January 10, 2020, several correction officers were seriously assaulted in the N1 Unit at SBCC, a maximum-security prison. Plaintiffs allege that after the assault, Defendants and other officers engaged in a monthlong campaign of unconstitutional retaliatory violence during which approximately 150 prisoners were subjected to excessive force. Plaintiffs also allege that the violence was racially motivated in violation of the Equal Protection Clause.

Plaintiffs allege that the period of retaliation lasted from January 10, 2020, through February 6, 2020, the last day of the lockdown in effect since January 10. Plaintiffs allege that during that period, DOC officers used malicious and sadistic methods of force against prisoners, not to restore order but to punish prisoners for the actions of the few who were involved in the assault on officers on January 10. Plaintiffs allege that officers targeted Black and Latinx prisoners for especially brutal and degrading treatment, such as yanking and ripping out dreadlocks and braids and shouting racist comments and slurs.

Plaintiffs further allege that the alleged campaign of violence was planned, encouraged, and condoned by uniformed supervisors, including the Uniformed Supervisor Defendants, and by officials at the highest levels of DOC, including the Administrative Supervisory Defendants. Defendant Mici authorized the use of tactical teams, which are groups of specially outfitted prison officers assigned to respond to disturbances with special weapons and tactics. Plaintiffs allege that Defendant Mici and other high-ranking officials were aware of and approved of tactical teams' alleged use of unlawful force against prisoners. In his deposition, a lieutenant in the special

operations unit testified that Deputy Commissioner Paul Henderson told a group of officers on January 10 that they had the "green light," which he understood to suggest that officers did not need to follow policy. Plaintiffs assert that the policy referenced is the use of force policy, which sets limits on the type and amount of force officers may use.

Plaintiffs allege that the events during the damages class period of January 10, 2020 to February 6, 2020 are part of a history of unconstitutional violence by tactical teams and DOC staff against SBCC prisoners. Plaintiffs allege Defendants have authorized and condoned practices and customs that allow officers to violate prisoners' rights with impunity. Defendants deny these allegations.

Plaintiffs allege that Defendants' conduct during the class period constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the Constitution, and racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs also allege that Defendants engaged in a conspiracy to deprive Plaintiffs and class members of their constitutional rights. Defendants deny these claims.

On behalf of themselves and all others similarly situated to them, Plaintiffs seek damages for alleged injuries due to violations of their rights during the class period and declaratory and injunctive relief to remedy Defendants' alleged continuing constitutional violations. All of the proposed class representatives identify as either Black or Latinx.

## II. Legal Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S.Ct. 2541 (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 99 S.Ct. 2545, 2557, (1979)). Therefore, "a class representative must be part of the class and possess the same interest and

suffer the same injury as the class members." Id. at 348-349. A plaintiff seeking to certify a class "must establish the four elements of Rule 23(a) and one of the several elements of Rule 23(b)." Smilow v. Southwestern Bell Mobile Systems, Inc., 323 F.3d 32, 38 (1st Cir. 2003); see Fed. R. Civ. P. 23(a)-(b).

"Rule 23(a) requires that: (1) there be numerosity, (2) there be common questions of law or fact, (3) the class representative's claims be typical of the class, and (4) the representative's representation of the class be adequate." In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 18 (1st Cir. 2008) (citing Fed. R. Civ. P. 23(a)). In addition, in this case Loughlin must satisfy the requirements of Rule 23(b)(3), which states that the court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action is superior to other methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

III. Discussion

A. Damages Class

The parties jointly seek to certify a damages class under Rule 23(b)(3) consisting of "all individuals incarcerated at Souza-Baranowski Correctional Center who were subjected to uses of force from January 10, 2020, to February 6, 2020." To be certified, a class must satisfy the four criteria under Rule 23(a) and one of the criteria under Rule 23(b). In addition, "the definition of the class must be 'definite,' that is, the standards must allow the class members to be ascertainable." In re Nexium Antitrust Litig., 777 F.3d 9, 19 (1st Cir. 2015). Here, the damages class is sufficiently definite because whether or not someone was subjected to a use of force is an objective determination that can be made with reference to Defendants' records and, where no such records

exist, by self-identification of class members by affidavits. *See, e.g., Ortiz v. Sig Sauer, Inc.*, No. 19-CV-1025-JL, 2023 WL 1928094, at *6 (D.N.H. Feb. 10, 2023).[1]

The parties seek certification under Rule 23(b)(3). Under Rule 23(b)(3), certification is appropriate if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

***Numerosity***

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although numerosity does not require the class size to exceed a certain threshold, "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009) (citation omitted). As the parties jointly assert that "well over a hundred" individuals fit the class definition, the Court agrees that the damages class satisfies the numerosity standard.

***Commonality***

Rule 23(a)(2) requires that there be "questions of law or fact common" to the proposed class. Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, a plaintiff must demonstrate that the proposed class's claims "depend upon a common contention," the resolution of which is "central to the validity" of each of the class's claims. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350, 131 S.Ct. 2541(2011); *see also* Parent/Professional Advocacy League v. City of Springfield, 934

[1] Ascertainability does not apply to classes seeking injunctive or declaratory relief under Rule 23(b)(2). *See* 1 McLaughlin on Class Actions § 4:2 (19th ed.)(collecting cases); *Yaffe v. Powers,* 454 F.2d 1362, 1366 (1st Cir. 1972)("[A]ctual membership of [a Rule 23(b)(2) ] class need not ... be precisely delimited because individual notice to class members is not required.").

F.3d 13, 28-29 (1st Cir. 2019). The commonality requirement is a "low bar." In Re New Motor Vehicles Canadian Export Antitrust Litig, 522 F.3d 6, 19 (1st Cir. 2008).

***Typicality***

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this requirement, the representative plaintiffs' injuries must "arise out of the same events or course of conduct" as the injuries of the class, and the representative plaintiff's claims must be "based on the same legal theory" as the claims of the class. In re Credit Suisse-AOL Sec. Litig., 253 F.R.D. 17, 23 (D.Mass. 2008). The typicality requirement, which tends to merge with the commonality requirement, *see Wal-Mart*, 564 U.S. at 349 n.5, is "not highly demanding because the claims only need to share the same essential characteristics, and need not be identical." Payne v. Goodyear Tire & Rubber Co., 216 F.R.D. 21, 24-25 (D.Mass. 2003).

The Court agrees that the typicality requirement is met here. The representative Plaintiffs' alleged injuries -- unpaid wages and unpaid benefits -- are representative of the class's injuries. These alleged injuries arise from the same set of events as the claims of other class members and are based on the same legal theories. Like the class representatives' claims, class members' claims stem from the same events during the declared major disorder and lockdown from January 10, 2020, to February 6, 2020 — specifically, the alleged widespread use of force that Plaintiffs contend was excessive and retaliatory.

***Adequacy***

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem

Products, Inc. v. Windsor, 521 U.S. 591, 625, 117 S.Ct. 2231 (1997). "The moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985). The Court discerns no conflict between the Plaintiffs and the proposed class and understands that the Plaintiffs' chosen counsel is well-qualified to prosecute the case. See Ouadani v. Dynamex Operations East, LLC, 405 F. Supp. 3d 149, 163 (D.Mass. 2019). The interests of the named Plaintiffs here and the class members share the same claims and a common interest in the claims' success. The Court finds that the adequacy requirement is met.

*23(b)(3) Predominance*

A class action is maintainable under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods, 521 U.S. at 623 (1997). "The inquiry requires "careful scrutiny to the relation between common and individual questions" in the case. Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453, 136 S.Ct. 1036, (2016). While the inquiry has overlap with questions of commonality and typicality, it is "far more demanding." New Motor Vehicles, 522 F.3d at 20 (quoting Amchem, 521 U.S. at 624) (2013)). "Rather, the question is whether there is "reason to think that [individualized] questions will overwhelm common ones and render class certification inappropriate." Id.

The central issue in this case is whether the Administrative Supervisory Defendants directed, condoned, or were otherwise deliberately indifferent to the use of excessive force by correction officers during the class period. In support of this claim, Plaintiffs point to testimony that Deputy Commissioner Paul Henderson told tactical team members they had the "green light," which the lieutenant understood to suggest that officers did not need to follow policy. Plaintiffs assert that the policy discussed is the use of force policy. Plaintiffs further allege that Administrative Supervisory Defendants were present for and did nothing to stop excessive uses of force, thereby condoning it. Plaintiffs allege that the Administrative Supervisory Defendants directed that no handheld video cameras would be used to record planned uses of force, in violation of DOC policy and with the tacit purpose of authorizing improper conduct. Plaintiffs allege that these Defendants failed to properly investigate uses of force or to discipline improper uses of force, and that these Defendants condoned untruthfulness in writing reports. Defendants dispute these allegations; their denial raises common issues of fact shared by all class members, and thus weighs in favor of certification.

*23(b)(3) Superiority*

Rule 23(b)(3) requires "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," and identifies several "matters pertinent" for the court to consider. Fed. R. Civ. P. 23(b)(3). These are "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

<u>Equal Protection Subclass</u>

Plaintiffs seek to certify a damages subclass consisting of "all Black and Latinx individuals incarcerated at Souza-Baranowski Correctional Center who were subjected to uses of force from January 10, 2020, to February 6, 2020" under Rule 23(d)(1),[2] which provides that a court conducting a class suit "may issue orders that determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument … [or] deal with similar procedural matters." Fed. R. Civ. P. 23(d)(1)(A), (E). Plaintiffs contend that certifying a subclass is appropriate here because only the Black and Latinx class members have Equal Protection claims. Plaintiffs further argue that creation of the subclass will not increase litigation costs but will instead facilitate management of discrete claims. Defendants oppose the creation of a subclass as it "serves no functional purpose." Further, Defendants argue against the need for a subclass for equal protection claims as those claims can be encompassed within the proposed damages class. The Court agrees with the Plaintiffs and for case management purposes, will certify a damages subclass consisting of "all Black and Latinx individuals incarcerated at Souza-Baranowski Correctional Center who were subjected to uses of force from January 10, 2020, to February 6, 2020" under Rule 23(d)(1).

Injunctive Class Definition

Plaintiffs seek to certify a Rule 23(b)(2) injunctive relief class defined as, "All individuals who are now, or who will be in the future, incarcerated at Souza-Baranowski Correctional Center." Defendants agree that certification of a Rule 23(b)(2) class is appropriate; they simply contend that the class should be defined more narrowly so that it includes only individuals incarcerated at SBCC during the damages class period, January 10, 2020, to February 6, 2020. Defendants' position is

[2] Plaintiffs do not seek certification of a subclass under Rule 23(c)(5), which is appropriate where there is "fundamental intraclass conflict."

that this proposed class is overly broad because it would be speculative to include future Eighth Amendment violations that are not yet ripe for certification.

The Court agrees that certification of such a broadly tailored injunctive class would be improper under Rule 23(a) because there is a lack of commonality and typicality. See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349, n.5 (2011) (noting that "the commonality and typicality requirements of Rule 23(a) tend to merge"). "Typicality requires that the class representative's injuries arise from the same events or course of conduct as do the injuries of the class[.]" Henderson v. Bank of N.Y. Mellon, N.A., 332 F. Supp. 3d 419, 427 (D.Mass. 2018) (internal quotation marks and citation omitted). Should further discovery show that a pattern or practice is an ongoing, systemic issue, the Court can reconsider the possibility of redefining the class.

## IV. CONCLUSION

For the foregoing reasons, the motion to certify the class (Docket No. 65) is **GRANTED in part and DENIED in part.**

**SO ORDERED.**
Dated: September 30, 2024

/s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge