# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

DWAYNE DIGGS, ET AL.

                    Plaintiffs,

           v.

CAROL MICI, ET AL.

                   Defendants.

4:22-cv-40003-MRG

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into this 21st day of May, 2025, by and among (i) the Named Plaintiffs (defined below), on behalf of themselves and each Class Member (defined below), by and through their undersigned counsel, and (ii) the Defendants (defined below), by and through their undersigned counsel, and will be submitted to the Court for its approval pursuant to Fed. R. Civ. P. 23.

This Agreement is intended by the Parties (defined below) to fully, finally, and forever compromise, settle, release, resolve, discharge, and dismiss with prejudice the Action (defined below), upon and subject to the terms and conditions stated in this Agreement, and Final Approval of the Court.

## I.   SUMMARY

1.    Plaintiffs and Defendants have entered into this Settlement Agreement, which they submit for the Court's approval. The Agreement requires the Commonwealth of Massachusetts, on behalf of Defendants, to make payments totaling $6,750,000 (six million seven hundred fifty thousand dollars and zero cents), inclusive of attorneys' fees and costs, to be allocated as described

below, and for DOC to implement agreed upon policy changes and other steps as set forth in Exhibit A to address and resolve Plaintiffs' claims arising from the events at SBCC from January 10, 2020 through February 6, 2020, including, but not limited to, claims concerning the alleged use of excessive force and alleged racial discrimination by correction officers.

**NOW THEREFORE,** without any admission or concession whatsoever on the part of Named Plaintiffs or any Class Member regarding any lack of merit of the claims in the Action, and without any admission or concession whatsoever on the part of Defendants of any liability or wrongdoing or lack of merit of their defenses in the Action, it is hereby **STIPULATED AND AGREED,** by and among the Parties, through their respective attorneys, subject to approval of the Court pursuant to Fed. R. Civ. P. 23 and other conditions set forth herein, in consideration of the benefits flowing to the Parties from the Agreement, that the Action shall be fully, finally, and forever compromised, settled, released, resolved, discharged, and dismissed with prejudice, upon and subject to the following terms and conditions:

## II.   <u>DEFINITIONS.</u>

2.     As used in this Settlement Agreement, the following terms shall have the meanings specified below.

    a.   "Action" refers to *Diggs, et al. v. Mici, et al.*, No. 4:22-cv-40003-MRG (D. Mass.).

    b.   "Agreement" refers to this Settlement Agreement.

    c.   "Claimant" refers to anyone submitting a Claim Form or Generic Claim Form.

    d.   "Claim Form" refers to the form that must be completed and signed by Class Members in order to make a claim for payment under the Agreement. A copy of the Claim Form is attached as Exhibit B.

e. "Claims Administrator" shall refer to the firm retained by Plaintiffs' Counsel, at Plaintiffs' Counsel's expense, subject to approval of the Court, to provide all notices approved by the Court to Class Members and to receive and process Claim Forms and to provide the other administrative services described in this Agreement.

f. "Claims Deadline" refers to the date by which valid and completed Claim Forms must be received by the Claims Administrator in order for Class Members to receive payment under the Agreement. The Claims Deadline, which shall appear on the Class Notice and Claim Form, shall be approximately ninety (90) days after the date that Notice is first mailed to Class Members, or as determined by the Court.

g. "Class Fund" refers to the total amount to be paid to Class Members under the Agreement. The Class Fund is equal to the Settlement Amount minus the amount of Attorneys' Fees and Costs paid to Plaintiffs' Counsel. "Net Class Settlement Fund" shall mean the Settlement Amount minus any deductions as set forth in paragraph 52.

h. "Class Member" is any member of the classes certified by the Court on September 30, 2024. The damages and injunctive classes consist of "all individuals incarcerated at Souza-Baranowski Correctional Center who were subjected to uses of force from January 10, 2020, to February 6, 2020." All Class Representatives, Equal Protection Subclass Members, and Kneeling-Only Cohort Members are Class Members.

i. "Class Notice" refers to the Notice of Class Action and Proposed Settlement provided to Class Members as described in this Agreement. A copy of the proposed Class Notice is attached as Exhibit C.

j.  "Class Period" refers to the period from January 10, 2020 through February 6, 2020.

k.  "Class Representatives" or "Named Plaintiffs" refers to the nine Plaintiffs named in the Complaint: Dwayne Diggs, Demetrius Goshen, James Jacks, David Jackson, Raphael Rebollo, Luis Saldana, Davongie Stone, Xavier Valentin-Soto, and Danavian Daniel. All Class Representatives are Class Members and Equal Protection Subclass Members.

l.  "Commonwealth" refers to the Commonwealth of Massachusetts.

m.  "Complaint" refers to Plaintiffs' Complaint filed in this Action.

n.  "Defendants" refers to present and former Department of Correction (DOC) officials and officers Carol Mici, Paul Henderson, Patrick DePalo, Charles Primack, Steven Kenneway, Dean Gray, Ronald Gardner, Donald Denomme, David Brien, Paul Birri, Keith Houle, Robert Deschene, James Allain, James Gearin, Robert D'Amadio, Joseph Bellini, John Madden, and Evan Laranjo.

o.  "Defense Counsel" refers to undersigned attorneys from the DOC.

p.  "Distribution Formula" refers to the manner in which the Class Fund will be allocated among Class Members who submit valid and timely claims.

q.  "DOC" refers to the Massachusetts Department of Correction.

r.  "Equal Protection Subclass Member" refers to any Class Member who is also a member of the damages subclass certified by the Court on September 30, 2024. The Equal Protection Subclass consists of "all Black and Latinx individuals incarcerated at Souza-Baranowski Correctional Center who were subjected to uses of force from January 10, 2020, to February 6, 2020."

s.  "Escrow Account" refers to a secure holding arrangement where a neutral third party holds funds and ensures they are disbursed only upon fulfillment of the mutually agreed upon conditions between the parties.

t.  "Generic Claim Form" refers to the form designed for individuals whom the parties have not already determined to be Class Members. A copy of the Generic Claim Form is attached as Exhibit D.

u.  "Generic Class Notice" refers to the notice of class action and proposed settlement designed for individuals whom the parties have not already determined to be Class Members. A copy of the Generic Class Notice is attached as Exhibit E.

v.  "Kneeling-Only Cohort Member" refers to any Class Member who **both** (1) was made to kneel in the main corridor on the second floor of SBCC following the altercation in Unit N1 on January 10, 2020, **and** (2) was not subjected to any other alleged use of force during the class period.

w.  "Opt-Out" refers to any Class Member who files a valid and timely request for exclusion from this Settlement Agreement. "Opting Out" refers to the process of filing such a request for exclusion.

x.  "Parties" refers collectively to Plaintiffs and Defendants.

y.  "Plaintiffs" refers collectively to the Named Plaintiffs and other Class Members.

z.  "Plaintiffs' Counsel" refers to undersigned attorneys from Prisoners' Legal Services and Hogan Lovells US LLP.

aa. "Settlement Amount" refers to the total monetary amount, $6,750,000, to be paid by the Commonwealth of Massachusetts in connection with this Agreement, and includes all payments to Class Members and all attorneys' fees and costs to fully,

finally, and forever compromise, settle, release, resolve, discharge, and dismiss with prejudice this Action, upon and subject to the terms and conditions stated in this Agreement, and upon Final Approval of the Court, and in consideration of the promises and consideration contained herein, the adequacy and sufficiency of which are hereby acknowledged.

bb. "SBCC" refers to Souza-Baranowski Correctional Center.

## III.  **BACKGROUND**

3.    On January 10, 2022, the nine named Plaintiffs filed the Complaint in this Action on behalf of themselves and all others similarly situated, seeking damages and injunctive relief, including but not limited to claims of cruel and unusual punishment, conspiracy, failure to intervene, and equal protection as constitutional violations under the Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, and intentional infliction of emotional distress. The Complaint alleges that following an assault on several correction officers in the N-1 Unit at SBCC, Defendants and other DOC employees engaged in a campaign of unconstitutional retaliatory violence during which approximately 150 prisoners were subjected to excessive force amounting to cruel and unusual punishment under the Eighth Amendment. The Complaint also alleges that Black and Latinx prisoners were targeted for especially brutal and degrading treatment in violation of the Fourteenth Amendment.

4.    On March 25, 2022, Defendants answered the Complaint, denying all allegations against them.

5.    Defendants have denied and continue to deny any fault, liability, or wrongdoing of any kind or that the evidence developed supports in any way the claims asserted. Defendants also have denied and continue to deny each and all of the claims and contentions alleged by Plaintiffs. Defendants further have denied and continue to deny that Plaintiffs were harmed or suffered any

loss as a result of any of the conduct alleged in the Action. Defendants are entering into the Agreement to eliminate the burden, expense, inconvenience, uncertainty, distraction, and risk of further litigation; the length of continued proceedings necessary to defend the Action through trial and any appeals; and to avoid continued litigation. Therefore, Defendants believe that it is desirable that the Action and any other current or future potential actions brought by Plaintiffs that relate in any way to the allegations raised in the Complaint be settled upon the terms and conditions set forth herein, in order to avoid the further expense and burden of protracted litigation.

6.  On November 20, 2023, the Parties filed a Partially Joint Motion for Class Certification.

7.  On September 30, 2024, the Court certified a damages class consisting of "all individuals incarcerated at Souza-Baranowski Correctional Center who were subjected to uses of force from January 10, 2020, to February 6, 2020." The Court certified an injunctive class with the same definition. The Court also certified a damages subclass, described in this Agreement as the Equal Protection Subclass, consisting of "all Black and Latinx individuals incarcerated at Souza-Baranowski Correctional Center who were subjected to uses of force from January 10, 2020, to February 6, 2020."

8.  The Parties engaged in extensive discovery for almost three years. Discovery included 17 depositions of multiple Defendants, other current and former DOC employees, and an employee of DOC's medical provider at the time of the Class Period. Defendants produced more than 99,000 pages of documents and more than 450 GB of video of uses of force and other events from the Class Period. Seventeen of the Defendants answered 14 interrogatories each; Defendant Carol Mici, the former Commissioner of DOC, answered 22 interrogatories. Before filing suit, Plaintiffs'

counsel engaged in extensive investigation of the facts underlying the case, including interviewing more than 100 class members and other witnesses.

9.    The Parties first engaged in settlement discussions in 2022 but were unable to reach agreement. In November 2024, the parties reinitiated settlement discussions and engaged in extensive arm's length negotiations for more than six months until reaching this Settlement Agreement.

10.    The Parties have concluded that settlement is desirable in order to avoid the time, expense, and inherent risks and uncertainties of continuing this Action. The Parties believe that this Settlement Agreement is fair, reasonable, and adequate and that it meets the criteria for approval by the Court under Federal Rule of Civil Procedure 23(e)(2).

11.    This Agreement, whether or not consummated, any proceedings relating to any settlement of the Action, or any of the terms of any settlement of the Action, whether or not consummated, shall in no event be construed as, or deemed to be evidence of, an admission or concession on the part of Defendants with respect to any claim of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in any defense that Defendants have or could have asserted in the Action.

12.    The Parties understand that this Agreement requires the Court's approval and agree to take all necessary actions to obtain preliminary and final approval of the Agreement. The Parties shall submit this Agreement along with a Joint Motion for Preliminary Approval within five (5) days of its execution, and shall submit a Joint Motion for Final Approval in accordance with any schedule ordered by the Court. If the Court does not grant Final Approval, this Agreement shall be null and void, and of no force and effect, and nothing herein shall be deemed to prejudice the position of any Party, and neither the existence of this Agreement, nor any of its terms or

provisions, nor any of the negotiations or proceedings connected with it, shall be admissible in evidence, referred to for any purpose in this Action or in any other litigation or proceeding, or construed as an admission, presumption, or concession by any Defendant of any liability or the truth of any of the allegations of this Action.

## IV.  **REQUIRED PAYMENTS AND INJUNCTIVE RELIEF**

### A.  **Payments**

13. On behalf of Defendants, the Commonwealth of Massachusetts will pay $6,750,000, inclusive of attorneys' fees and costs, to settle Plaintiffs' claims. The Settlement Amount consists of (1) the Class Fund and (2) Attorneys' Fees and Costs to Plaintiffs' Counsel as approved by the Court.

14. Each Class Member who submits a valid and timely Claim Form shall be issued a payment from the Class Fund, according to the Distribution Formula below. No Class Member who does not submit a valid or timely claim form shall receive any payment under this Settlement Agreement. The Distribution Formula is as follows:

    a. Each Class Representative who submits a valid and timely Claim Form shall receive $25,000 ("Incentive Payment") in addition to any other payments to which the Class Member is entitled under the Distribution Formula.

    b. Each Equal Protection Subclass Member who submits a valid and timely Claim Form shall receive $10,000 (the "Equal Protection Payment") in addition to any other payments (under sections (a), (c), and (d)) to which the Equal Protection Subclass Member is entitled under the Distribution Formula.

    c. Each Kneeling-Only Cohort Member who submits a valid and timely Claim Form shall receive $10,000 (the "Kneeling-Only Payment"). Kneeling-Only Cohort

Members who are also members of the Equal Protection Subclass shall also receive the Equal Protection Payment. Kneeling-Only Cohort Members shall not receive a General Payment, described below (under section (d)). Class Members who are not Kneeling-Only Cohort Members shall not receive a Kneeling-Only Payment.

d. Each Class Member who is not a Kneeling-Only Cohort Member shall receive a General Payment in addition to any other payments (under sections (a) and (b)) to which the Class Member may be entitled under the Distribution Formula. General Payments are allocated from the portion of the Class Fund remaining after deducting all payments made under sections (a), (b), and (c); this remaining portion is the General Payment Pool. As a calculation, the General Payment Pool is equal to the Class Fund minus all Incentive Payments, Equal Protection Payments, and Kneeling-Only Payments. The General Payment is calculated by dividing the General Payment Pool by the number of Class Members entitled to receive a General Payment. The dollar amount of each General Payment therefore depends on the number of Class Members who submit valid claims. Each Class Member entitled to a General Payment shall receive only one General Payment regardless of the number or types of uses of force to which the Class Member was subjected. Class Members who receive a General Payment shall not receive a Kneeling-Only Payment regardless of whether they were among the group of individuals required to kneel in the corridor on January 10, 2020.

15.    The entire Class Fund will be distributed to Class Members under the above Distribution Formula. There will be no residual funds.

16.    Payments to Class Members under this Agreement are for all asserted damages on account of alleged physical injury and on account of alleged emotional distress attributable to physical injury.

17.    Plaintiffs' Counsel will petition the Court for payment of Attorneys' Fees and Costs of $1,000,000, to be paid from the Total Settlement Amount. Defendants will take no position on this motion.

18.    The Commonwealth shall make all payments as detailed in this Agreement.

**B.        Injunctive Relief**

19.    Defendants shall implement agreed upon policy changes, and other steps as set forth in Exhibit A ("Injunctive Relief"). Within thirty (30) days of implementing each agreed upon policy change and other steps as set forth in Exhibit A, Defense Counsel must inform Plaintiffs' Counsel in writing and provide, where applicable, documentation of the steps or policy changes, including the final version of all policies changed.

**V.    <u>CLASS NOTICE AND CLAIMS ADMINISTRATION</u>**

20.    Plaintiffs' Counsel will recommend that the Court approve Analytics, LLC of Chanhassen, Minnesota (Analytics) as the Claims Administrator for this case, and Defendants take no position regarding same. Plaintiffs' Counsel represent that Analytics has provided similar claims administration services in many other class action cases, including several prisoner class actions brought in Massachusetts. Plaintiffs' Counsel will bear the total cost of the Claims Administrator, and have included this estimated cost in their application for Attorneys' Fees and Costs to the Court.

21.    The Claims Administrator will administer notice to Class Members in the manner prescribed by the Court; shall receive and record all Claim Forms, Objections, and Requests for

Exclusion; shall review all Claim Forms and send a notice of denial to any claimant whose Claim Form is invalid, including to any claimant not previously identified as a Class Member who submits a Generic Claim Form that is not approved; and shall calculate the payment to Class Members in accordance with the Distribution Formula. The Claims Administrator will provide Plaintiffs' Counsel with the Class Distribution List after final approval of the settlement, as described in ¶ 50, below. The Claims Administrator will distribute payments to Class Members and provide the other services described below. Except as otherwise provided herein, Defendants shall have no liability, obligation, or responsibility for the Notice, administration or processing of claims in the Agreement, or disbursement of the Class Fund, including without limitation, final determinations as to the amounts of claims, validity of claims, distributions of the Class Fund, or any losses incurred by the Class Fund or the Claims Administrator. Defendants shall not review, contest, or object to any claim.

22.    Plaintiffs' Counsel shall be responsible for supervising the administration and disbursement of the Class Fund. Defendants and their counsel shall cooperate with and provide the Claims Administrator and Plaintiffs' Counsel with information available to them that is sufficient to provide notice to the Class Members.

23.    As soon as practicable, but in no case later than the date the Court holds a hearing on preliminary approval of the Settlement Agreement, Defense Counsel will provide Plaintiffs' Counsel with the following information for all Class Members: (a) name; (b) DOC commitment number, (c) Social Security Number(s) as appearing in DOC records, (d) date(s) of birth as appearing in DOC records; (e) DOC facility address if currently incarcerated, last known address upon release if no longer incarcerated, along with the date of the Class Member's release from DOC custody. The information described in (a) through (e) of this paragraph, which shall be

known as the "Class Member Information," shall be provided electronically in Microsoft Excel format. DOC is not responsible for inaccuracies in information that was reported to the DOC by the Class Member or other sources. The "last known address(es)" shall mean the most recent address(es) known to DOC. If Plaintiffs' Counsel have an address directly from the Class Member or another source, Plaintiffs' Counsel will substitute this address for the address provided by DOC on the Class Member Information spreadsheet, if it is known to be more recent than the address provided by DOC; if it is unknown which address is more recent, Plaintiffs' Counsel will add the address to the Class Member Information spreadsheet, so that the Class Notice and Claim Form will be sent to both addresses. Plaintiffs' Counsel will send an email request attaching the Class List to Defense Counsel for forwarding to the Parole Board and Sheriffs' Departments.

24.    Plaintiffs' Counsel will forward the Class Member Information, along with any information obtained by DOC, to the Claims Administrator, who will send a Class Notice and a Claim Form (collectively, the "Notice Packet"), by first-class mail postage prepaid to all Class Members at their last known addresses within seven (7) days of receipt of the Class Member Information from Plaintiffs' Counsel, or the date the Court preliminarily approves the settlement, whichever is later. If any mail is returned by the post office with notice of a more current address, the Claims Administrator will resend the Notice Packet to the newer address. If any mail is returned by the post office as undeliverable without notice of a more current address, the Claims Administrator will use an online skip trace service to identify potentially current addresses of Class Members. Plaintiffs' Counsel will also attempt to reach Class Members via social media and email. Plaintiffs' Counsel may, but is not required to, make further efforts to contact Class Members individually.

25.    If any Class Member provides DOC with updated contact information, Defense Counsel will provide this information to Plaintiffs' Counsel, who will forward this information to the Claims Administrator.

26.    The Class Notice will include the terms of the settlement including the Class Member's rights to object to or opt out of the settlement. The Class Notice will explain the settlement terms and answer anticipated questions. The Class Notice will provide the date and time of the Final Fairness Hearing. The proposed Notice to be mailed to Class Members is attached as Exhibit C.

27.    The Claim Form requests the Class Member's contact information, including full name, Social Security or Taxpayer ID Number, date of birth, and instructions for check delivery. The Claim Form also requests that the Class Member identify their race/ethnicity. The Claim Form requires that the Class Member declare under pains and penalties of perjury that all information provided is true and accurate. The Claim Form is attached as Exhibit B.

28.    At the time they provide Plaintiffs' Counsel with Class Member Information, Defense Counsel shall identify each Class Member who is then in the custody of DOC. Plaintiffs' Counsel shall be responsible for delivery of the Notice Packet to each such Class Member.

29.    Thirty (30) days before the deadline for submitting claim forms, Defense Counsel shall provide Plaintiffs' Counsel with (1) the name, commitment number, and DOC facility address of any Class Member then in DOC custody who was not in DOC custody at the time the Class Member Information was first provided; and (2) the name, commitment number, and last known address upon release of any Class Member who has been released from DOC since the time the Class Member Information was first provided.

30.    The Claims Administrator and Plaintiffs' Counsel shall provide a copy of a Generic Notice and Generic Claim Form – designed for individuals whom the Parties have not already

determined to be Class Members – to anyone upon request. The Generic Notice and Generic Claim Form are attached as Exhibit D and Exhibit E, respectively.

31.     To provide notice to Class Members who do not receive actual individual notice, Plaintiffs' Counsel shall perform the following actions: Plaintiffs' Counsel shall issue a press release informing the public of the settlement. The press release shall be sent to state and local news organizations, including but not limited to the *Boston Globe*, *Worcester Telegram*, and *Springfield Republican*, the Associated Press, and several Massachusetts radio and TV stations within five (5) business days of preliminary approval. The Notice, Claim Form, and other information about the lawsuit will also be available on Prisoners' Legal Services' website, www.plsma.org. Notice as set forth in this paragraph shall be deemed sufficient legal notice to Class Members who did not receive actual individual notice.[1]

32.     To claim a share of the settlement, a Class Member must submit a valid and complete Claim Form that is received no later than the Claims Deadline, which shall be ninety (90) days after the date that Notice is first mailed to Class Members, or as determined by the Court.

33.     Claim Forms received after the Claims Deadline will be denied as untimely, except if allowed by the Court.

34.     To object to the proposed settlement, a Class Member must submit a written notice of objection to the Claims Administrator that is received by the Claims Deadline. An objector who has submitted a timely written notice of objection may also appear in person if no longer incarcerated, virtually if incarcerated, or through counsel, at the Final Fairness Hearing. The

---

[1] The Notice Plan does not include placing a formal "legal notice" in the classified section of traditional media publications because in Plaintiffs' Counsel's experience they are not an effective or efficient means of notice. Few if any individuals (including currently or formerly incarcerated individuals) see or read such notices, and any Class Member who did see such a notice in this case would in all likelihood be aware of the Settlement from other, more widely seen sources.

Claims Administrator shall forward all objections to Defense Counsel and Plaintiffs' Counsel, who will file all written objections with the Court no less than ten (10) days before the Final Fairness Hearing, or at a date determined by the Court. Objecting Class Members must also submit a Claim Form if they wish to be eligible to receive payment from the settlement if the settlement is approved, despite their objection or any other objections.

35.    The Claims Administrator will review each Claim Form submitted by a Class Member to determine its validity to qualify the Class Member to be issued payment from the settlement. For a Claim Form to be approved as valid, the following must be true: (a) the Claim Form must be timely; (b) the information on the Claim Form must be consistent with the Class Member Information; and (c) the Claim Form must be completely filled out and signed under the pains and penalties of perjury.

36.    The Claims Administrator will provide Plaintiffs' Counsel with copies of all Generic Claim Forms received. Plaintiffs' Counsel will determine the validity of the claim. Defense Counsel agrees to make reasonable efforts to provide DOC documents and information necessary for Plaintiffs' Counsel to make such determination. For a Generic Claim Form submitted by an individual not on the Class List to be approved as valid, it must meet conditions (a) and (c) in the preceding paragraph, and must reasonably establish, along with any supporting documentation provided by the individual and any records or information in the possession of Plaintiffs' Counsel and DOC, that the Claimant was subjected to a use of force at SBCC during the Class Period and is therefore a Class Member. Plaintiffs' Counsel shall investigate the claim, and shall make a determination as to whether the Claimant is a Class Member. Plaintiffs' Counsel shall inform the Claims Administrator of the decision; the Claims Administrator shall provide notice of the decision to the Claimant.

37.    By submitting a Generic Claim Form, the Claimant shall be deemed to authorize the DOC to release any information from their inmate files and medical records that may be necessary to determine their claim. A statement to this effect shall be included in the Generic Claim Form. DOC will permit Plaintiffs' Counsel to review those portions of the Claimant's records which would assist in the evaluation of the claim.

38.    The Claims Administrator may, after consulting with Plaintiffs' Counsel and in Plaintiffs' Counsel's discretion, waive a technical defect in a completed Claim Form or Generic Claim form to achieve substantial justice.

39.    If a Claim Form or Generic Claim Form is not approved, the Claims Administrator will send a Notice of Claim Denial to the individual submitting the claim.  The Claims Administrator shall provide a copy of the notice of denial to Plaintiffs' Counsel and Defense Counsel.

## VI.    EXCLUSION FROM SETTLEMENT CLASS—OPT-OUTS

40.    Any Class Member who wishes to be excluded from the settlement must submit a written request to be excluded from the Class, a process defined as Opting Out. The written request for exclusion shall be sent to the Claims Administrator and must be received by the Claims Administrator on or before the Claims Deadline or as the Court may otherwise direct. The Claims Administrator shall provide Plaintiffs' Counsel and Defense Counsel with the names of any Class Members who submit an Opt-Out request. Defense Counsel will provide Plaintiffs' Counsel with the names of all individuals required to opt out pursuant to settlement agreements and contact information of their counsel.

41.    Any Class Member who does not Opt-Out as set forth in this Settlement Agreement, shall be bound by the Settlement Agreement, and all subsequent proceedings, orders, and judgments herein, regardless of whether the Claimant files a Claim Form.

42.    Any Class Member who opts out may not submit a Claim Form and shall not share in any monetary benefits provided by this Settlement Agreement.

43.    The Claims Administrator will provide a list of all Opt-Outs, as well as copies of all Opt-Out requests, to Plaintiffs' Counsel and Defense Counsel.

## VI.    SUBMISSION FOR PAYMENT

44.    As soon as practicable and no later than thirty (30) days following Defense Counsel's receipt of all executed W-9 forms and the Distribution List from Plaintiffs' Counsel, following approval of the Agreement at the Final Fairness Hearing or after receipt of the Distribution List from Plaintiffs' Counsel, whichever is later, Defense Counsel shall submit to the Comptroller's Office for payment an executed Settlement and Judgment Payment Authorization Form, along with all required documentation. The Comptroller's Office will process the Commonwealth's monetary obligation in accordance with the procedures set forth in 815 C.M.R. 5.00.

45.    The Parties acknowledge that the Commonwealth's ability to effectuate payment of the Settlement Amount is subject to appropriations by the Legislature. DOC will make its best efforts to obtain the funding necessary to comply with this Agreement.

## VII. EXPENSES AND ATTORNEY'S FEES

46.    Plaintiffs' Counsel will ask the Court to approve payment of Prisoners' Legal Services' attorneys' fees and litigation costs in the combined amount of $1,000,000, inclusive of the fees of the Claims Administrator. Any such fees and expenses awarded by the Court are to be paid solely from the Settlement Amount. Defendants will take no position on this request. Hogan Lovells US LLP has provided its services pro bono and will not seek payment for its attorneys' fees or litigation costs. Any attorneys' fees and litigation expenses approved by the Court shall be paid when the distribution payments are mailed to Class Members.

18

47.     The Parties have engaged in exceptionally hard-fought litigation for more than three years. Before filing the lawsuit, Plaintiffs' Counsel conducted an extensive investigation into the facts and circumstances underlying the claims asserted in the Complaint. Plaintiffs' Counsel represent that Prisoners' Legal Services (PLS) and Hogan Lovells US LLP have each devoted several thousand hours to the case. Plaintiffs' Counsel's request for attorneys' fees and costs does not include any fees and costs for Hogan Lovells US LLP, which has agreed not to seek attorneys' fees or costs. PLS's requested fee award represents approximately fifteen percent (15%) of the Settlement Amount. Plaintiffs' Counsel are significantly reducing the amount of their fee request in order to facilitate settlement and maximize the amount received by Class Members. Plaintiffs' Counsel, during settlement negotiations, informed Defense Counsel of their intention to seek reduced fees. Plaintiffs seek payment of attorneys' fees and costs out of the total Settlement Amount because the Parties negotiated a global settlement, inclusive of any attorneys' fees and costs sought by Plaintiffs' Counsel.

## VIII.   DISTRIBUTION TO CLASS MEMBERS

48.     After Final Approval of the Court, the Class Fund will be distributed to Class Members in accordance with the Distribution Formula approved by the Court. Except as provided herein or pursuant to orders of the Court, the Net Class Settlement Fund shall remain in an Escrow Account prior to distribution. All funds held in the Escrow Account for the Class Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed pursuant to this Agreement and/or further order of the Court. All risks related to the investment of the Class Fund shall be borne by the Class Fund.

49.     In addition to payments received as members of the Class and the Equal Protection Subclass, Class Representatives who submit valid and timely claims shall each receive an

Incentive Payment of $25,000, subject to the Court's approval and to be paid from the Class Fund, as described in the Distribution Formula. Plaintiffs' Counsel represent that the Incentive Payment is to compensate Class Representatives for the extensive time and effort the Class Representatives have devoted to the case, as well as the asserted loss of privacy and potential exposure to adverse attention as a result of being the public face of high-profile litigation against the DOC. They have regularly provided Plaintiffs' Counsel with information for the past five years and assisted with the Complaint, discovery, and settlement.

50.    The Claims Administrator will prepare a settlement distribution list containing legal names, current addresses, mailing addresses if different, Social Security Numbers or Taxpayer ID numbers, dates of birth, and Distribution Amounts to Class Members ("Distribution List"). Plaintiffs' Counsel shall then send the initial Distribution List to Defense Counsel.

51.    Any subsequent change of address requests must be made in writing, signed by the Class Member. Defense Counsel will give notice to Plaintiffs' Counsel upon receipt of notification that the funds have been appropriated. At this time, Plaintiffs' Counsel will send a final Distribution List that reflects all changes of address.

52.    The Commonwealth will issue two direct payments from the Settlement Amount: (a) to the Claims Administrator; and (b) to Plaintiffs' Counsel for attorneys' fees and costs, as approved by the Court. The Commonwealth may deduct from a Class Member's payment amount any outstanding child support, tax obligations, or other delinquent debts owed to the Commonwealth pursuant to M.G.L. c. 7A, § 3, or delinquent debts owed under other state and federal laws. If the Class Member owes a debt subject to interception, the Comptroller will directly apply funds from the Settlement Amount to the debt owed by the Class Member and will notify

Plaintiffs' Counsel and the Claims Administrator when that has been done. The Claims Administrator will then calculate a revised Distribution Amount for each such Class Member.

53.    Defense Counsel will provide to Plaintiffs' Counsel copies of the "Notice of Settlement/Judgment Tax Reporting and Withholdings, Claimant Receipt of W-2, 1099-MISC or 1099-INT Forms." The Commonwealth of Massachusetts makes no representations as to the timing of any settlement payment, and the timing of any settlement payment is subject to the availability of appropriated funds. The Commonwealth of Massachusetts is not liable for interest for any delay in payment of the settlement amount. It is understood that Defendants make no representations as to the tax consequences of said payment. Class Members are responsible for all tax liabilities and tax consequences of the payment to them, and Defendants, the Commonwealth of Massachusetts, and their counsel are held harmless as to any tax liabilities and tax consequences of Class Members.

54.    The Claims Administrator will issue Class Members' checks  made payable in their name or in the name of a deceased; in the name of the Class Member's estate, provided that the duly appointed estate representative has complied with ¶ 57; or in the name of a next-of-kin, provided that the next of kin has complied with ¶ 58. The check will contain a memorandum or other indication that it is payment for the "Souza-Baranowski class action settlement" to help Class Members identify the check's purpose. The Claims Administrator will mail the check to the Class Member at the address indicated on the Claim Form or as updated as provided in ¶ 51. The Commonwealth shall not make changes to the addresses or other information on the Distribution List without Plaintiffs' Counsel's prior approval.

55.    If a Class Member is confined in a prison, hospital, or other institution and has provided the address of such location for payment, then the check will be sent to that address.

## IX.    POST-DISTRIBUTION ADMINISTRATION

56.    Checks not presented for payment within one year from the date of issue will be subject to M.G.L. c. 29, § 32.

## X.    DECEASED/INCAPACITATED CLASS MEMBERS

57.    If a Class Member is deceased or incapacitated, an authorized representative may file a Claim Form on their behalf. However, the representative must provide documentation that an estate has been established in accordance with the law and that he or she is the duly appointed representative.

58.    Notwithstanding the previous paragraph, the Parties agree that a deceased Class Member's next of kin may file a claim, which may be treated as valid. However, the individual filing such a claim must provide the Claims Administrator with a copy of documentation that they are the duly appointed administrator, executor, or personal representative of the estate. If there is no estate, the individual must provide Plaintiffs' Counsel with a copy of the death certificate and an affidavit (a statement signed under the pains and penalties of perjury), indicating their relationship to the deceased Class Member, together with a properly completed Claim Form. Payment to such Claimant will constitute a full and final release of all claims on behalf of the deceased Class Member. No party to this action shall be liable to any other individual or entity purporting to be entitled to any payment otherwise due to the deceased Class Member. Pursuant to the Settlement Agreement, any such next of kin is responsible for all tax liabilities and tax consequences of their respective payments, and Defendants, the Commonwealth of Massachusetts, and their counsel are held harmless as to any tax liabilities and tax consequences.

## XI.    RELEASE AND DISMISSAL

59.    In consideration of payment of the Settlement Amount and implementation of the agreed upon policy changes pursuant to Exhibit A, Plaintiffs, including Class Members who do not file claims but not including Opt-Outs,[2] hereby remise, release, acquit, satisfy, and forever discharge any and all present and former officials, officers, and employees of the Massachusetts Executive Office of Public Safety and Security (EOPSS) and the Massachusetts Department of Correction (DOC), including but not limited to, Carol Mici, Paul Henderson, Patrick DePalo, Charles Primack, Steven Kenneway, Dean Gray, Ronald Gardner, Donald Denomme, David Brien, Paul Birri, Keith Houle, Robert Deschene, James Allain, James Gearin, Robert D'Amadio, Joseph Bellini, John Madden, and Evan Laranjo and their respective attorneys, agents, heirs, administrators, executors, employees and other representatives, past and present, whether named or unnamed, or served or unserved, from any and all debts, demands, actions, causes of action, suits, damages, dues, accounts, bonds, covenants, contracts, agreements, promises, liabilities, obligations, judgments, costs, expenses, claims and demands, whatsoever, of every name and nature, at law, in equity, or otherwise, known or unknown, which against any of them Class Members now have or ever had from the beginning of the World to and including the date of this Settlement Agreement, by reason of any cause, matter, or thing whatsoever which was or could have been asserted in the Action, including but not limited to any claims of excessive force, retaliation, constitutional violations including but not limited to Eighth and Fourteenth Amendment violations, failure to intervene, intentional infliction of emotional distress, federal conspiracy claims, and  Massachusetts Civil Rights Act violations, arising from or in any way

---

[2] Any Class Member who brought a separate lawsuit raising claims arising out of the events at issue in this Action and who entered into a settlement agreement requiring such Class Member to opt out of this Action and thereby waive all rights and claims of Class Members under this Action and Settlement Agreement, is ineligible to file a Claim Form or receive any compensation under this Settlement Agreement.

related to the facts alleged in the Complaint, and any alleged physical and emotional injuries resulting therefrom, whether brought under G.L. c. 258, 42 U.S.C. § 1983, G.L. c. 12, § 11, or any other legal theories of recovery.

60.    It is the express intent of the Plaintiffs to enter into and be bound by this full and final Settlement Agreement to settle and compromise any and all claims against Defendants by Plaintiffs. The Parties to this Agreement will execute for filing with the Court a Stipulation of Dismissal, with prejudice, of the Action against Defendants, in the form attached hereto as Exhibit F. This Stipulation of Dismissal, with prejudice, will be filed with the Court upon Final Approval of the Settlement Agreement and after payment of the Settlement Amount. Such Stipulation will state that the Court retains jurisdiction to enforce this Settlement Agreement, and that all rights of appeal are waived, with each party to bear their own attorneys' fees and costs, except as otherwise expressly set forth herein.

61.    Plaintiffs agree and acknowledge that no promise, inducement, or agreement not expressly contained in this Agreement has been made to them. This Settlement Agreement supersedes any and all previous agreements or understandings, whether written or oral, and contains the entire agreement by and among the Parties with respect to the allegations in the Complaint of this action.

62.    It is the express intent of Defendants and the Commonwealth to be bound by this Settlement Agreement.

## XII.  COURT SUPERVISION

63.    Until the Court dismisses this action pursuant to ¶ 60, the Court shall retain jurisdiction over the Settlement Agreement and may enter orders as appropriate to enforce it, and to effect fair and orderly administration. If either Party believes that there is a matter arising from the Parties'

compliance with the terms of this Settlement Agreement which warrants the Court's involvement, the Parties shall first confer with a view to finding a mutually agreeable resolution. If the Parties cannot reach a mutually agreeable resolution, the Parties shall submit a joint status report to the Court, succinctly identifying the issue, following which the Court may schedule a status conference or take such other actions as the Court deems appropriate.

64.    The Court may change any deadlines, dates, or other details in this Settlement Agreement on a showing of good cause.

## XIII.   MISCELLANEOUS PROVISIONS

65.    This Settlement Agreement is a public document and may be subject to disclosure.

66.    This Agreement shall be governed by the laws of the Commonwealth of Massachusetts, and shall be binding upon and inure to the benefit of the Parties, and their respective attorneys, agents, representatives, directors, officers, employees, assigns, executors, successors, and administrators. No modification or termination of this Agreement, in whole or in part, shall be valid or binding unless in writing and signed by the Parties.

67.    The Parties agree that this Agreement and its attachments is a fully integrated document which constitutes the entire agreement between them.

68.    The Parties and their respective counsel of record agree that they will use their best efforts to obtain all necessary approvals of the Court required by this Agreement.

69.    This Agreement is the result of an arm's-length negotiation. Since all Parties contributed substantially, materially, and cooperatively in drafting this Agreement, it shall not be more strictly construed against one Party than any other.

70.    If any provision in this Agreement shall, for any reason, be held invalid or unenforceable in any respect, it shall not affect any other provisions in this Agreement, but shall

be construed by limiting it so as to be enforceable to the maximum extent compatible with applicable law, so long as such construction does not materially alter the rights or obligations of the Parties or deprive the other Parties of consideration for the undertakings and promises described herein.

71.    Multiple copies of this Agreement with separate signatures shall serve as one merged document.

## XIII. <u>EXHIBITS</u>

72.    The following Exhibits are attached to this Agreement:

| | |
|---|---|
| Exhibit A | Injunctive Relief |
| Exhibit B | Claim Form |
| Exhibit C | Class Notice |
| Exhibit D | Generic Class Notice |
| Exhibit E | Generic Claim Form |
| Exhibit F | Stipulation of Dismissal With Prejudice |

For Defendants,

By their attorneys,

NANCY ANKERS WHITE
Special Assistant Attorney General

Stephanie M. Caffrey (BBO # 697075)
Brittni Wipper (BBO # 696783)
**Massachusetts Department of Correction**
70 Franklin Street, Suite 600
Boston, MA 02110
(617) 727-3300

For the Plaintiffs and the Plaintiff Class,

By their attorneys,

Lauren Petit (BBO # 640410)
David Milton (BBO # 668908)
Kristyn J.E. Huey (BBO # 686668)
Rachel Talamo (BBO #713707)
**Prisoners' Legal Services of
Massachusetts**
50 Federal Street, 4th Floor
Boston, MA 02110
(617) 482-2773

Anthony E. Fuller (BBO # 633246)
Gregory F. Noonan (BBO # 651035)
Alexandra G. Watson (BBO # 676145)
Courtney A. Caruso (BBO # 687642)
Kayla H. Ghantous (BBO # 709197)
Fleming Farrell (admitted *pro hac
vice*; D.C. Bar No. 90004877)
**Hogan Lovells US LLP**
125 High Street, Suite 2010
Boston, MA 02110
(617) 371-1000

EXHIBIT A

INJUNCTIVE RELIEF

The parties have agreed that DOC will implement the following agreed upon policy changes and other steps as set forth herein. Specific additions to policy language that DOC has agreed to appear in red below.

1. K-9

   DOC agreed to make the following changes to current 103 DOC 558, K-9 Unit policy: Requirements Governing the Use of K-9 Units (1) Only those K-9 Units approved by the Commissioner shall be used within any correctional institution. Patrol K-9 Units may not be used in state correctional institutions without prior authorization of the Commissioner or his/her/their designee. In addition, the Secretary of Public Safety or his/her/their designee will be notified of such K-9 Unit use immediately. Such use shall only be approved in an effort to regain control during a major disorder (riot, major disturbance, etc.) or to assist during an escape. Use of patrol K-9s shall cease upon the return of inmates to their cells and provided there are no imminent threats to the safety and security of inmates and staff. Patrol K-9s inside facilities shall remain muzzled until a K-9 handler determines imminent intervention by a K-9 is necessary. (2) Authorization is not required for regular routine searches by Contraband Detection K-9 Units or searches within or outside of an institution during which, under normal circumstances, there is limited contact with inmates and injuries would not normally result.

2. Kneeling

   DOC commits to the language it added to 103 DOC 520, Instruments of Restraint, below: B. Inmates shall never be instructed to kneel by Department employees, except when necessary to apply/remove Instruments of Restraint, and only for such time as is needed to apply/remove said Instruments of Restraint.

3. Selection for force teams

   DOC agrees that the following language will be added to 103 DOC 559, Special Operations Response Units:

   A CO for whom an excessive use of force has been substantiated, as determined by the Department following a DOC Professional Standards Unit investigation, is immediately removed from SORU and may not reapply for three (3) years from the date of incident. Of course, even after three (3) years, a CO may be rejected for SORU based on their past discipline history or other negative factors. Substantiated grievances are among the factors considered in reviewing an applicant for SORU.

Any verdict or finding in a civil proceeding against SORU members will be reviewed by the Special Operations Command Group ("SOCG"). The SOCG will take a holistic approach, reviewing not only the verdict/ruling, but the subject officer's work history and disciplinary history from the date of the incident to the issuance of the adverse verdict/ruling to determine whether any further course of action should be taken.

DOC also made the following policy changes since January 2020, which remain in effect:

- Three-day team leader and team member trainings offered every other month; Officers at SBCC and 282 recruits have been trained in proper techniques of "forced" moves since 2022;
- Standardized training, with strict adherence to National Tactical Officers Association ("NTOA") rules, specifying proper training and number of training hours;
- SORU members and Special Operations Division ("SOD") staff train in Disorder Management annually;
- Any time an SORU is activated, the Video Response Team ("VRT") is automatically activated as well.
- While under review pursuant to 103 DOC 559, Administrative Review, members may train with SORU but may not go on deployments; members placed on Administrative Leave may neither train nor go on deployments.

4. Body Worn Cameras ("BWC")

DOC commits to imposing progressive discipline on officers who fail to use their BWC as required by the BWC policy.

5. Implicit bias training

DOC has agreed to implement a diversity and implicit bias training into the Academy and annual staff training.

6. Racial self-identification

DOC agrees that an incarcerated individual's self-reported racial identification will be requested and confirmed at booking, upon their admission to a facility. To ensure this, the following language will be added to 103 DOC 401, Bookings and Admissions, section 401.01(B)(1)(c): Inmate Data, including self-reported racial identification. Once the information is entered in IMS, the Inmate Self-Identification Form will be printed, and the inmate will be asked to confirm the information and sign. The signed Inmate Self-

2

Identification Form will be placed in the inmate's six-part folder and IMS will reflect the self-reported racial identity.

This will impact DOC records only and would not alter any outside agency's records.

7. SORU name tags

DOC agrees to add language to 103 DOC 224, Uniforms requiring that SORU members wear name tags on the back of SORU members' vests.

8. Anonymous staff misconduct hotline for staff reporters

DOC will implement an anonymous tipline for employees to report misconduct or other concerns.

9. Prohibit and discipline racial slurs.

DOC commits to include language in 103 DOC 230, Discipline and Terminations stating that "[e]mployees who are found to have violated a DOC policy or rule shall be subject to discipline in accordance with the requirements of this policy."

DOC agrees to add language to 103 DOC 400, Inmate Management, 400.05: "DOC employees shall refrain from discriminating against any individual because of race, gender, creed, national origin, religious affiliation, age, disability, gender identity, or any other type of prohibited discrimination. Employees shall not use profane or abusive language toward any inmate, nor reply in such language to what is perceived to be impudent or insulting words or actions by an inmate, make no disparaging reference to inmates regarding their color, creed, race or crimes they have committed."

10. Photos of injuries

DOC agrees to add the following language in red to 103 DOC 505, Standard Operating Procedures:

"Photographs shall be taken of each inmate after a Use of Force, whether or not the inmate has visible injuries upon arrival at the Health Services Unit or other designated area in which medical care is being provided. Photographs shall be taken of, including but not limited to, each inmate's face, torso, back, and extremities, as well as any area on the body where the inmate claims injury, both before and after medical treatment. If an inmate refuses to be photographed, such refusal shall be recorded in an incident report. Inner Perimeter Security ("IPS") officers shall be responsible for taking photographs when they

3

<span style="color: red">are on duty. When IPS officers are not available, the Shift Commander, in their discretion, will assign the appropriate staff to take the photographs."</span>

11. <u>Vera Institute project</u>

DOC agrees to permit communication between PLS and the Vera Institute in the context of DOC's project with Vera to improve culture at DOC facilities, and to facilitate such communication by placing representatives of PLS and Vera in contact with one another, so that PLS may offer information and a perspective on the factors contributing to culture problems within the DOC and in particular at SBCC.